# The W. G. Wood Company v. Benjamin F. Nysewander et al.

## Elmer C. Bye et al., v. Same.

## Oscar H. Haugan et al., v. Same.

## On Appeal of Haagan Otterson et al., Appellants, v. State Bank of Chicago, Appellee.

### Gen. No. 19,305.

1. MECHANICS' LIENS, § 151*—*word "completion" in section 7 of Lien Law construed.* The word "completion" in section 7 of the Mechanics' Lien Act, J. & A. ¶ 7145, requiring a contractor as against incumbrancers to file his claim or bring suit "within four months after completion," must be construed to mean completion

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

of work or completion of the delivery of material for which a contractor seeks to enforce his lien, and not to mean completion of the contract so that the limitation of said section would not apply where the contract was partially performed.

2. MECHANICS' LIENS, § 151*—*when lien for partial performance not preserved against lien of incumbrancer.* A contractor's lien on the improvements for partial performance of the contract given by section 4 of the Mechanics' Lien Act, J. & A. ¶ 7142, becomes subsequent to the lien of an incumbrancer on the real estate, where he fails to file his claim for lien or to bring suit to enforce the same within four months from the time he abandoned the contract.

Appeal from the Superior Court of Cook county; the Hon. WILLIAM E. DEVER, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1913. Affirmed. Opinion filed June 15, 1914. Rehearing denied June 29, 1914. *Certiorari* denied by Supreme Court (making opinion final).

Statement by the Court. B. F. Nysewander, the owner of certain lots, entered into a contract with the appellant Otterson, who was a general contractor, for the erection of four buildings upon the said lots. Otterson did the carpenter work, and he let out to various subcontractors other parts of the work, such as masonry, cement, plumbing, plastering, etc. Work was begun under the contract in October, 1909. On October 21, 1910, because of the failure of Nysewander to pay certain moneys due under the contract for work already done, Otterson discontinued the work. For a period of ten days thereafter Nysewander continued in default, and on November 1, 1910, the appellant abandoned the work on the buildings. No work was done on them thereafter, and because of the failure of Nysewander to make the payments due to Otterson under the contract, Otterson failed to make payments to the subcontractors in accordance with his contracts with them. He filed no claim for lien with the clerk in the Circuit Court. It is admitted that all the various subcontractors commenced suits to enforce their liens within apt time. The appellee, the State Bank of Chicago, an incumbrancer, contended in the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

lower court that the lien of the appellant was subordinate to the lien of the appellee because the appellant did not commence suit to enforce his lien as to an incumbrancer within four months after the completion of the work done by him under his contract, and that therefore the lien of the appellant as to the improvements on the premises was a subsequent lien to that of the appellee. The appellee filed a cross-bill to enforce its lien. On the trial of the case, the appellant introduced evidence to the effect that from the time he abandoned work on the premises until some time in May, 1911, he held a number of interviews with Nysewander, in which the matter of completing the contract was discussed; that Nysewander at these interviews always expressed himself as being hopeful that he would be able to raise sufficient money to pay for the completion of the buildings. Otterson testified that he expected to finish the buildings under his contract until May, 1911, when Nysewander told him bankruptcy proceedings had been commenced against him, Nysewander, and that he would not be able to complete the buildings and that Otterson should protect himself by filing a lien claim. Otterson then "abandoned the contract." The decree finds that Otterson had a mechanic's lien on the improvements on the real estate, but that it was a subsequent lien to that of the appellee, an incumbrancer. The only appeal taken from the decree is that of the appellant Otterson. It appears from the record that the claim of the appellant Otterson has been assigned to the appellant Thornton-Claney Lumber Company.

A. A. ROLF, for appellants.

M. B. WALTZ, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

The decree in this case finds that Haagan Otterson had a mechanic's lien on the improvements on the real estate involved herein, but that the lien was a subsequent one to that of the appellee, the State Bank of Chicago, an incumbrancer, and the only question presented by this appeal is, did the chancellor err in decreeing that the said lien of the said Otterson was a subsequent lien on the said improvements to that of the appellee? The appellant contends that the chancellor should have found that the lien of Otterson was a prior one on said improvements to that of the appellee.

Section 7, ch. 82, of the Revised Statutes of Illinois (Hurd's) page 1479 (J. & A. ¶ 7145), so far as it is material to the present inquiry, reads as follows:

"No contractor shall be allowed to enforce such lien against or to the prejudice of any other creditor or incumbrancer or purchaser, unless within four months after *completion,* or if extra or additional work is done or material is delivered therefor within four months after the completion of such extra or additional work or the final delivery of such extra or additional material, he shall either bring suit to enforce his lien therefor or shall file with the clerk of the Circuit Court in the county in which the building, erection or other improvement to be charged with the lien is situated, a claim for lien, verified by the affidavit of himself, or his agent or employe, which shall consist of a brief statement of the contract, the balance due after allowing all credits and a sufficiently correct description of the lot, lots or tracts of land to identify the same. Such claim for lien may be filed at any time after the contract is made, and as to the owner may be filed at any time after the contract is made and within two years after the completion of said contract, or the completion of any extra work or the furnishing of any extra material thereunder, and as to such owner may be amended at any time before the final decree."

The decision of this case requires us to interpret the

meaning of the italicized word "completion" in the above section. Appellant contends that the work done by the appellant was regular work (as distinguished from extra or additional work); that the first clause in the above section is the only part of the section that is applicable to appellant's lien, and that the said clause is without force and effect, for the reason that there is no definite time fixed nor the happening of any certain event stated when the limitation should begin to run; that it is impossible to determine the meaning of the italicized word "completion"; that it might mean "completion of contract, completion of work, completion of building, completion of the last delivery of material, or any other number of events that might happen," and that the courts have no power to interpolate words to supply the defect in the act; and appellant argues, as section 7 is without force and effect as to the lien of the appellant and as there is no other limitation section in the act, that applies to said lien, the chancellor erred in not finding that the lien of the appellant was a prior one to that of the appellee. Appellant further argues that (if this court should hold that it is possible to ascertain the meaning of the italicized word "completion" from a reading of the act) the only reasonable meaning that can be given to the said word is, *completion of the contract.*

In determining, if possible, the meaning of the italicized word "completion" in section 7, it is our duty to follow certain well known rules laid down by the courts. In the late case of *Krome v. Halbert,* 263 Ill. 172, it is said: "It is an elementary rule of construction that all parts of a statute must be considered together and not each by itself. * * * In the construction of a statute the courts are not confined to a literal meaning of the words, but the intention may be collected from the necessity or objects of the act and its words may be enlarged or restricted according to its intent. A thing which is within the in-

tention is regarded within the statute though not within the letter, and a thing within the letter is not within the statute unless within the intention.  When the intention can be collected from the statute, words may be modified, altered or supplied so as to obviate any repugnancy or inconsistency with such intention.  The several provisions of a statute should be construed together in the light of the purpose and objects of the act, so as to give effect to the main intent, even though in so doing particular provisions are not construed according to their literal reading.''  After a careful consideration of section 7 and the entire act, in the light of the above rule, we are satisfied that the meaning of the word ''completion'' is not so indefinite and uncertain that it cannot be ascertained.  It seems reasonably plain to us that the word in question means completion of work or completion of the delivery of material for which a contractor (that is a contractor under the act) seeks to enforce his lien as against any other creditor, etc., under section 7.  While it is essential to a right of lien of a contractor that some work be actually done or some material be actually furnished by him under his contract, it is not essential to his right of lien that the contract be fully performed on his part.  Under section 4 of the act, (J. & A. ¶ 7142), a contractor is allowed a lien for a partial performance of the contract when there has been a breach of the contract by the owner of the land.  The plain purpose of section 7 is to give notice to creditors, etc., of all existing liens on improvements on real estate.  The meaning that we have given to the word in question carries out the intent and object of the section, and at the same time it does not conflict with the purpose and intent of any other part of the act.  To give to the word the meaning contended for by the appellant, that is, that the said word means completion of the contract, would, in our judgment, tend to destroy the very purpose of the section.  Under such an interpretation, creditors, incumbrancers or purchasers

of existing liens on improvements might have practically no protection against lien claimants. In our opinion, the reasoning of the court in *Schmidt v. Anderson*, 253 Ill. 29, supports our conclusion as to the meaning of the word in question.

It is admitted that Otterson, on November 1, 1910, abandoned work upon the premises, and that no work was thereafter done by him on the buildings. To the bill filed by the complainant and to the cross-bill filed by Bye et al., Otterson answered on June 17, 1911, that he discontinued work upon the premises in question on October 21, 1910, because Nysewander had neglected and failed to make payments due him under the contract, and that this default continuing for ten days thereafter, he abandoned work upon the premises on November 1, 1910. Otterson asked that this answer be considered as an intervening petition, and he prayed that the court might decree that he be given a lien upon the premises for the sum of eight thousand dollars. If we are correct in our conclusion as to the meaning of the word "completion" in section 7, it is apparent that the appellant, by the said answer, did not protect his lien as against creditors, incumbrancers or purchasers, in accordance with the requirements of said section, as he predicated his right to a lien upon section 4, and he did not file the said answer (the first effort he made to comply with the requirements of section 7) until more than four months after the said abandonment.

Even if we were to give to the word "completion" the meaning contended for by the appellant (that is, that the word means completion of the contract), this would avail the appellant nothing. On October 14, 1911, the cross-bill of Haugan et al. was filed in the case. On November 20, 1911, Otterson, by order of court, filed an answer to the same. In this answer he set up that on November 1, 1910, he *temporarily* stopped work upon the buildings at the request of Nysewander; that he repeatedly offered to complete his contract "but was re-

quested to wait; that in May, 1911, said Nysewander told this defendant that he was about to file a petition in bankruptcy, and that he would not be able to carry out his contract with this defendant, and this defendant thereupon in said May, 1911, *abandoned said contract.*" Otterson asked that this answer be considered as an intervening petition, and that he be given a lien on the premises for the sum of eight thousand dollars. The appellant relies upon this answer in support of his lien in case we should hold that the word "completion" means *completion of the contract.* Therefore, if you give to the word "completion" the meaning contended for, the appellant has not protected his lien against an incumbrancer, in accordance with the provisions of section 7, for in this last answer he stated that he abandoned his contract in May, 1911, and the answer was not filed until November 20, 1911, or about six months after the so-called "abandonment of the contract" by Otterson.

We hold that the appellant, as against the appellee, an incumbrancer, did not protect his lien under the requirements of section 7, and that the finding of the chancellor that the lien of the appellant was a subsequent one to that of the appellee was a proper one. The decree of the Superior Court of Cook County is therefore affirmed.

*Affirmed.*