South Beloit Electric Company, Inc., an Illinois Corporation, Plaintiff-Appellee, v. Lar Gar Enterprises, Inc., La Salle National Bank, a National Banking Association, of Chicago, Illinois, Its Successor or Successors, as Trustee, Under the Provisions of a Trust Agreement Dated August 28, 1962, Known as Trust No. 29937, Joel Robert Hillman, Salk, Ward & Salk, a Corporation, Defendants-Appellants.

Gen. No. 66–27.

Second District.

March 8, 1967.

Goldberg, Levinson & Komie, of Chicago (William Levinson, of counsel), for appellants.

Miller, Thomas, Hickey and Collins, of Rockford, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

This is an appeal from a Mechanic's Lien decree for $19,596 plus interest and costs. The decree further entered a money judgment in the same amount.

The plaintiff, South Beloit Electrical Co., Inc., as subcontractor, entered into a preliminary subcontract with defendant, Lar Gar Enterprises, Inc., as general contractor, under a letter agreement dated August 30, 1962, for electrical work on an apartment building being erected in Rockford, Illinois. The original contract price was $89,085, but this was shortly thereafter increased by $4,700 to cover the contemplated services of Malko Electric Co. in supervising the work to be done under the subcontract. The formal subcontract agreement was then

executed, showing the price to be $93,785, and the plaintiff commenced work thereunder.

In October of 1962, plaintiff made its first request for payment, submitting a lien waiver and contractor's affidavit. This request was for $4,230, being precisely the amount contemplated for the services of Malko Electric Co., after deducting the ten percent which was to be retained on all partial disbursements. These documents were submitted to Lar Gar who in turn submitted them to the defendant, Salk, Ward & Salk, Inc., the construction lender. Payment of the $4,230 was never received by the plaintiff. It is apparent from the testimony of all parties that Malko Electric Co. did no work whatsoever on the job. However, at monthly intervals thereafter, the plaintiff submitted five additional sworn statements, each clearly showing that the initial request of $4,230 had been received by it.

On March 6, 1963, the plaintiff submitted its final sworn statement, requesting payment of $17,419, and filed its waiver of lien therefor. As with its previous sworn statements, this one, too, showed the initial request of $4,230 as having been received by the plaintiff. The entire amount of $17,419 was paid to plaintiff on March 19, 1963, and on the same date, without notice to anyone, the plaintiff abandoned the job. The plaintiff's president testified that the sole reason for leaving the job was the failure to receive the $4,230.

The amended complaint alleged that plaintiff was entitled to $19,596, consisting of the initially requested amount of $4,230, labor and materials supplied from February 28th through March 19, 1963, in the amount of $11,223, and the ten percent retainages of $4,130. The plaintiff prayed for an accounting, and sought to enforce a mechanic's lien for any amounts which the court might find due it from any of the defendants. The answer and amended answer of the defendants pleaded as affirmative

defenses that the plaintiff breached its subcontract by abandoning performance thereunder without just cause on March 19, 1963, and that the plaintiff waived and released any lien it might otherwise have had by the execution of its full waiver of lien submitted on March 6, 1963. The amended answer also denied that notice of subcontractor's lien was properly served.

The court entered judgment against all of the defendants for $19,596, decreed the mechanic's lien, as prayed for in the amended complaint, and ordered a sale of the real estate involved if the judgment were not satisfied within thirty days.

The essential grounds urged for reversal are that no monies are due the plaintiff, that plaintiff itself materially breached the subcontract by wrongfully abandoning the job, that any lien rights which the plaintiff might otherwise have had were waived and released, and that the plaintiff did not serve its notice of subcontractor's lien in accordance with the law.

We first consider the items constituting the $19,596 for which the plaintiff brought suit and for which the court below entered judgment.

1. *The $4,230 initially requested but never received by the plaintiff.* Without question, this amount ($4,700 less ten percent retainage) requested by the plaintiff was that which the parties agreed would cover the expense of the contemplated supervisory services to be furnished by Malko Electric Co. This was precisely the amount of Malko's proposal for these services and it was precisely the amount by which the subcontract was increased for the purpose of providing the plaintiff with the extra funds with which to pay Malko. The testimony of the plaintiff's president himself established these facts. It was obviously never intended by any of the parties that this amount was for the ultimate benefit of the plaintiff.

Parenthetically, plaintiff's affidavit accompanying this request originally included certain services in addition to those of Malko. However, there were several penciled deletions and additions on the face of this statement, and while all of the labor and material listed added up to only $4,200, the figures of $4,230 and $4,700 were also written thereon. Moreover, all subsequent sworn statements of the plaintiff reflect the initial request as being for $4,230 (or $4,700 less ten percent)—and not for $4,200. In addition, a letter written by the plaintiff to the general contractor, as well as plaintiff's amended complaint, alleges that the initial payment due it was $4,230. This figure, penciled in plaintiff's original affidavit and appearing in all subsequent documents, could not possibly apply to the services of anyone other than Malko.

We come, then, to the question of whether the plaintiff was actually entitled to this payment which was to provide the funds for the contemplated supervisory services of Malko. It was agreed by all witnesses who testified on the subject, including the plaintiff's president, that Malko never had a representative on the job and rendered no services at all. It is therefore clear, from all the evidence before us, that Malko was entitled to no money whatsoever, and that receipt of this payment by the plaintiff would have constituted a windfall, for which the plaintiff had not bargained. The testimony of the plaintiff's president on the subject is inconsistent with its present demand for this payment:

"Q. And included in that price you were to get for doing the work was the services of Malko?
"A. Yes.
"Q. And that was $4,700.00?
"A. That's right.
"Q. And Malko never did the work?
"A. No.

"Q. And Malko from the start never did any work?

"A. No, sir.

"Q. *And Mr. Hallman or Lar Gar does not owe you for the work?*

"A. No, sir.

"Q. Isn't that true, Mr. Keough?

"A. Yes."

Similarly, the plaintiff's president later testified that the general contractor, for whom the defendant Hillman is president, was entitled to a credit from the plaintiff for the amount contemplated for Malko, but that such a credit was not given by the plaintiff:

"Q. On this Malko situation, you didn't give Mr. Hillman a credit for that in writing?

"A. No, sir.

"Q. But they didn't do the work?

"A. No, sir.

"Q. Then he should have received a credit, should he not?

"A. Yes."

In spite of the plaintiff's testimony that it was not owed the payment originally requested to cover Malko's services, and that the general contractor was entitled to a credit in that amount against the subcontract price because Malko in fact performed no services, the plaintiff, both through its testimony and its brief, offered as its *only* excuse for abandoning the job the fact that it did not receive this payment.

██ This portion of the subcontract price was specifically intended for a service which was never received. Accordingly, it should not have been recovered by the plaintiff.

2. *The $11,223 claimed to be due for labor and materials furnished from February 28th through March 19, 1963.* That portion of the plaintiff's amended complaint based on the labor and materials furnished by it

372

from February 28th through March 19, 1963, may be summarily disposed of:

The plaintiff never requested this amount in any of his sworn statements and in fact did not request it, if at all, until after he abandoned the job. Even then the request was not made in conformity to the subcontract. Paragraph 15 of the subcontract provides that, *at the option of the contractor,* each request shall be supported by proper releases or waivers of lien, together with a sworn statement setting forth that all labor and materials furnished have been fully paid for. That the contractor exercised this option and, throughout this job, required the release or waiver and the sworn statement, is admitted, in that the plaintiff's president testified that the general contractor "insisted" on these supporting documents, and that the plaintiff was "informed" of this. All prior requests for payments by the plaintiff were accompanied by such documents. There is, however, no evidence that the claim for labor and materials furnished from February 28th through March 19, 1963, was accompanied by such releases or waivers and affidavits.

There even seems to be considerable doubt as to whether this amount was *ever* requested by the plaintiff, with or without the required supporting documents. The plaintiff's president testified that this request was not even typed up until after plaintiff abandoned the job, and added, when asked whether it was submitted to the contractor or architect: "I don't know whether it was or not. I don't know whether that there request was submitted or not."

3. *The $4,130 represented by retainages.* The third and final element of damages claimed by the plaintiff and allowed by the lower court is the $4,130 which had been withheld from all of the partial payments made. Paragraph 15 of the subcontract contains the customary

373

provision that ten percent of all partial payment requests shall be withheld by the contractor until the final payment is made and all waivers in full and sworn statements are submitted.

■ ■ Under no interpretation of the subcontract could it be said that the plaintiff had a right to receive these amounts *during the course of performance.* The wrongful and unexcused abandonment thereof could not create the right. The party who breaches a contract may not then recover for amounts due him upon complete performance.

■ ■ Under this record the plaintiff was not entitled to receive any of the amounts included in the judgment of the lower court at the time of leaving the job. It follows that plaintiff's abandonment of the job was without justification and in itself constituted a material breach of the subcontract. That the plaintiff may have furnished labor and materials shortly before the abandonment does not create a lien right or a basis for the recovery decreed by the trial court, "It is a fundamental principle of the law that, in order for one to recover upon a contract, he must have performed his part of the contract." Archibald v. Board of Education of Chicago, 19 Ill App2d 554, 561, 154 NE2d 867 (1959); Abeles & Taussig Lumber & Tie Co. v. Northwest Side Lumber Co., 239 Ill App 623, 624 (1926).

The plaintiff abandoned the job on March 19, 1963, for the sole reason that it had not received the very first payment requested the preceding October, notwithstanding that all subsequent requests made before the abandonment were timely paid. "Where a contract is breached in the course of its performance, the injured party has a choice presented to him of continuing the contract or refusing to go on. If he chooses to continue performance, he has doubtless lost his right to stop performance." Williston, Contracts, § 683 (3d ed 1961). See also Lichter v. Goss, 232 F2d 715, 720.

Having taken the view that the plaintiff was not entitled to the monies claimed from any of defendants at the time it abandoned the job, and that the abandonment was unjustified and constituted a material breach of the subcontract, it follows that plaintiff had no lien rights. We find it unnecessary to consider whether the plaintiff effectively released any lien rights it may have had by giving waivers of lien and whether the plaintiff's notice of lien was properly served.

■ That part of the decree giving plaintiff a money judgment in the amount claimed was in error for the same reasons which defeat the right to a mechanic's lien. However, the trial below did not purport to meet the issue of what amounts, if any, plaintiff would be entitled to upon a noncontractual basis after a finding that it had wrongfully abandoned its contract. It appears that plaintiff has in good faith partially performed the contract and that defendant has received the benefits of such performance without payment. Under these circumstances it would be unjust to deprive plaintiff of the amount of such benefits less any damages suffered by its failure to complete the contract. Spiro v. Cable, 248 Ill App 343, 348; Turner v. Goodman, 90 Ill App 339, 342; Restatement of Contracts, § 357. The cause is therefore remanded so that evidence may be adduced for that purpose.

The decree of the trial court is reversed and the cause remanded for further hearing in accordance with this opinion.

Reversed and remanded.

MORAN and ABRAHAMSON, JJ., concur.