COMPONENTS, INC., Plaintiff, *v.* WALTER KASSUBA REALTY CORPORATION *et al.*, Defendants.—(MOHAWK CONSTRUCTION CO., Defendant-Appellant, *v.* JACK R. COURSHON, Nominee of the Trustees of First Mortgage Investors, Defendant-Appellee.)

Second District No. 77-109

Opinion filed September 19, 1978.

Harold W. Klingner, of Chicago, for appellant.

Thomas W. McNamara, of Jenner & Block, and Arthur W. Friedman, of DeVoe, Shadur & Krupp, both of Chicago, for appellee.

Mr. JUSTICE NASH delivered the opinion of the court:

Components, Inc., brought the underlying action in this case in February 1975 to foreclose a mechanic's lien against the partially constructed Countryside Trace apartment complex in Woodridge, Illinois, owned by Walter Kassuba Realty Corp. (Kassuba), a named defendant. Among those named as additional defendants by Components were Jack R. Courshon, as nominee of the trustees of First Mortgage Investors, a Massachusetts business trust (FMI), a mortgagee of the subject property; North American Construction Corp. (North American), the general contractor of the development; Mohawk Construction Co. (Mohawk), a subcontractor; and various others possessing possible interests in the subject property. Thereafter, FMI counterclaimed against all these parties, including Mohawk, seeking to foreclose a mortgage lien on the subject property and Mohawk counterclaimed against these same parties and FMI seeking to foreclose a mechanic's lien against the property. A motion by FMI for partial summary judgment in its favor against Mohawk was granted by the trial court which found that Mohawk's mechanic's lien was subordinate to FMI's mortgage lien. Mohawk appeals from that determination of the trial court.

The material facts are not in dispute. Mohawk, a concrete contractor, was engaged by North American to provide concrete work on the Countryside Trace project for a contract price of $265,500. It began work on May 31, 1973, and received its first progress payment of $110,771 on

November 8, 1973, based on a total of $123,079 worth of work performed through September 30, 1973. On December 18, 1973, Mohawk ceased work on the property because of North American's failure to make additional progress payments as required by its contract with Mohawk, and at no time thereafter did it perform any further work on the project. From September 30, 1973, the date of the last invoice, through December 18, Mohawk had provided an additional $42,102 worth of work, bringing its total claim to $54,410. On December 21, 1973, Kassuba and various related debtor entities, which included North American, instituted proceedings under chapter 11 of the Bankruptcy Act (11 U.S.C. §701 *et seq.*) and, thereafter, until at least mid-May 1974, Mohawk was from time to time assured by North American that the project would be completed. These assurances were based upon a "Master Loan Agreement," entered into between FMI and the Kassuba entities on February 4, 1974, and approved by the bankruptcy court, under which FMI would advance funds for the completion of various real estate developments engaged in by Kassuba, including the subject property. The proposed agreement was not consummated, however, due to various problems and, having received no request to resume work, Mohawk served notice on Kassuba on May 15, 1974, of monies due to it under its contract with North American. On July 11, 1974, Mohawk filed a claim for a mechanic's lien against Kassuba in the office of the recorder of deeds of Du Page County.

The issue presented is whether Mohawk timely filed its claim for lien according to the requirements of the Mechanics' Liens Act (Ill. Rev. Stat. 1973, ch. 82, pars. 1 through 39) such that its mechanic's lien obtained a priority over the mortgage lien of FMI. We find that it did not do so.

Section 21 of the Mechanics' Liens Act pertains to the liens of subcontractors and materialmen and concludes with the following provision:

> "Also, in case of default or abandonment by the contractor, the sub-contractor or party furnishing material, shall have and may enforce his lien to the same extent and in the same manner that the contractor may under conditions that arise as provided for in section four (4) of this act, and shall have and may exercise the same rights as are therein provided for the contractor." (Ill. Rev. Stat. 1973, ch. 82, par. 21.)

The pertinent portion of section 4 provides:

> "When the owner of the land shall fail to pay the contractor moneys justly due him under the contract at the time when the same should be paid, or fails to perform his part of the contract in any other manner, the contractor may discontinue work, and the contractor shall not be held liable for any delay on his part during the period of, or caused by, such breach of contract on the part of

the owner; and if after such breach for the period of ten days the owner shall fail to comply with his contract, the contractor may abandon the work, and in such a case the contractor shall be entitled to enforce his lien for the value of what has been done, and the court shall adjust his claim and allow him a lien accordingly." (Ill. Rev. Stat. 1973, ch. 82, par. 4.)

The above-quoted portions of sections 21 and 4 were intended to apply to the situation before us where a contractor defaulted on its subcontract at a time when there had been only partial performance by the subcontractor (*Koester v. Huron Development Co.* (1962), 25 Ill. 2d 337, 185 N.E.2d 196), and Mohawk correctly relies upon them as entitling it to enforce a lien for partially completed work. The time limitations applicable to the filing of claims for liens or suits to enforce liens of subcontractors under the Act, however, are found in section 28 which provides, in part, that

"If any money due to the laborers, materialmen, or sub-contractors be not paid within 10 days after his notice is served as provided in sections 5, 24, 25, and 27, then such person may either file a claim for lien or file his petition and enforce his lien within the same limits as to time and in such other manner as herein before provided for the contractor in section 7 and sections 9 to 20 inclusive, of this Act * * *." (Ill. Rev. Stat. 1973, ch. 82, par. 28.)

Section 7 of the Act then provides, in part, that

"No contractor shall be allowed to enforce such lien against or to the prejudice of any other creditor or incumbrancer or purchaser, unless within four months after completion * * * he shall either bring suit to enforce his lien therefor or shall file in the office of the recorder of deeds of the county in which the building, erection or other improvement to be charged with the lien is situated, a claim for lien * * *. Such claim for lien may be filed at any time after the contract is made, and as to the owner may be filed at any time after the contract is made and within two years after the completion of said contract * * *." Ill. Rev. Stat. 1973, ch. 82, par. 7.

FMI contends Mohawk cannot enforce its lien to the prejudice of FMI, an encumbrancer, because Mohawk failed to file either a claim for lien or suit to enforce its lien within four months after completion of the last work done by it on the project under its contract with North American, December 13, 1973, as was required under section 7.

Mohawk contends the requirement of section 7 that a claim for lien or suit to enforce that lien be filed "within four months after *completion*" (emphasis added) applies only in cases where a contract has been *completed,* and not here where it sought to perfect a lien for partially completed work pursuant to the last sentence of section 21. It asserts that in cases of partially completed contracts where that portion of section 21

is relied upon, such as that at bar, the subcontractor must only "act diligently" to enforce its lien as there is no statutory time limitation. We do not agree.

In *W. G. Wood Co. v. Nysewander* (1914), 187 Ill. App. 354, the court considered an argument analogous to that of Mohawk. There the lien claimant, a contractor, rightfully discontinued work under section 4 of the Act when the owner of the property failed to make payments due under their contract. At that time the contractor had only partially completed its contract. It did not, however, file a claim for lien or its suit to enforce its lien within four months of the last work it performed on the property. A mortgage lienholder then sought to assert a priority over the mechanic's lien of the contractor. The contractor argued, as does Mohawk, that section 7 applied only where a contract was entirely completed and did not impose a time limit of four months on its filing of a claim for lien or suit to foreclose in that case. After careful consideration of section 7, section 4 and the Act as a whole, in light of the general rules of statutory construction, the court concluded that the word *completion*, as used in the phrase "within four months after completion" in section 7, meant *completion of the work for which a contractor seeks to enforce his lien,* rather than completion of the contract. The court found, then, that the contractor's lien, which had not been timely perfected within four months of the date it rightfully discontinued work, was subordinate to the lien of the mortgagee.

■▌ We find the holding in *Nysewander* to be controlling on the facts before us. The subcontractors' lien for partially completed contracts under section 21 is the counterpart of the contractors' lien for partially completed contracts under section 4 which was at issue in *Nysewander*. Pursuant to section 28, the time limitations on perfection of contractors' liens found in section 7 are also applicable to subcontractors' liens. We believe Mohawk's contention that section 7 does not apply to subcontractors' liens under the last sentence of section 21 has no more merit than the contention in *Nysewander* that it did not apply to contractors' liens under section 4.

Mohawk also contends that its right under the last sentence of section 21 to enforce its lien due to default or abandonment of the subcontract by North American did not arise until mid-May 1974 when its hopes of receiving the past due amounts from North American and continuing work on the project were dashed by failure of the attempt by Kassuba and North American in bankruptcy court to refinance the project. Only then, it argues, did the breach by North American, for which work was discontinued on December 18, 1973, become "total" or final such that it could enforce a lien for default or abandonment of the incompleted subcontract. Certain provisions of Mohawk's subcontract are urged as

having required Mohawk to wait until the events of mid-May before considering the past due payments as a default under the last sentence of section 21. Therefore, Mohawk argues, the time period within which it must have perfected its lien in order to gain a priority over the mortgage lien of FMI did not begin to run until mid-May and its claim for lien was thereafter timely filed within two months on July 11. This contention is also without merit.

■■■ It is well established that mechanics' liens are in derogation of the common law and must, therefore, be strictly construed with reference to all the statutory requirements upon which the right to a lien depends. (*North Side Sash & Door Co. v. Hecht* (1920), 295 Ill. 515, 129 N.E. 273; *Suddarth v. Rosen* (1967), 81 Ill. App. 2d 136, 224 N.E.2d 602.) The plain purpose of the first sentence of section 7 is to give creditors, incumbrancers and purchasers notice of all existing mechanics' liens on real estate. (*W.G. Wood Co. v. Nysewander* (1914), 187 Ill. App. 354.) Mohawk discontinued work on December 18, 1973, because of North American's default in making progress payments which were due to it and did not resume thereafter. That date, not mid-May 1974, was when Mohawk completed the work for which it sought to enforce its lien and section 7 applied to impose a four-month deadline from then for perfection of a lien by Mohawk in order to have priority over the lien of the incumbrancer FMI. To allow Mohawk to extend the time for perfecting its lien beyond four months from the date North American's breach had caused it to discontinue work on the project, because North American had assured Mohawk it would cure its default, would do clear violence to the language and intent of section 7. No case has been cited justifying such an extension and we will not allow it here. Also, we find nothing in the asserted contract provisions which precluded Mohawk from considering the failure of North American to make the progress payments in question as a default under the last sentence of section 21.

For the above reasons we hold that Mohawk did not perfect its lien as against FMI and affirm the order of the Circuit Court of Du Page County granting a partial summary judgment in favor of FMI decreeing that its lien was superior to that of Mohawk.

Affirmed.

SEIDENFELD, P. J., and GUILD, J., concur.