DEERFIELD ELECTRIC CO., INC., *et al.*, Plaintiffs, *v.* HERBERT W. JAEGER & ASSOCIATES, INC., *et al.*, Defendants.—HERBERT W. JAEGER & ASSOCIATES, INC., Plaintiff and Counterdefendant-Appellee, *v.* SLOVAK AMERICAN CHARITABLE ASSOCIATION, Defendant and Counterplaintiff-Appellant.

Second District    No. 77-287

Opinion filed March 20, 1979.—Supplemental opinion filed on rehearing July 27, 1979.

Edward Atlas, of Petit and Safeblade, of Chicago, for appellant.

Murray R. Conzelman, of Conzelman, Schultz, Snarski & Mullen and Julian Johnson, of Snyder, Clarke, Dalziel, Holmquist & Johnson, both of Waukegan, for appellee.

Mr. JUSTICE NASH delivered the opinion of the court:

Defendant, Slovak American Charitable Association (the Association), appeals from a judgment which awarded plaintiff, Herbert W. Jaeger & Associates, Inc. (Jaeger), a mechanic's lien against certain of defendant's property, assessed damages in favor of plaintiff for breach of a construction contract between the parties and denied defendant's counterclaim for damages for breach of that contract.

On May 24, 1972, the Association entered into a contract with Jaeger, a general contractor, for construction of a rest home on property owned

by it in Lake County at a price of $690,000. The contract called for payments to be made to Jaeger as construction progressed. The Association secured a construction loan to finance the project from Exchange National Bank of Chicago (the Bank) and construction was commenced by Jaeger in March 1973. On May 18 Jaeger received a letter from the Association stating that the Bank, which was also handling payouts for the Association, requested that it obtain from Jaeger a complete list of subcontractors and itemized costs for the various trades which was necessary in order to plan future financing. On June 15 Jaeger sent the Association a letter in which it requested its first progress payment under the contract of $84,080 and listed 11 subcontractors by name and trade stating, "[t]he following is a list of sub-contractors to date and as we get anymore names we will forward them to you." No mention was made in the letter of any amounts due or to become due to individual subcontractors nor was this list verified by oath or affidavit. On June 19 the Association forwarded to the Bank Jaeger's letter requesting payment together with an application for payment form devised by the American Institute of Architects (AIA) it had subsequently received from Jaeger. The AIA form listed under the heading "DESCRIPTION OF WORK" 42 separate categories of matters involved under the contract, for example, permit, architect, earth-work, rough lumber, carpenter labor, electrical, sales engineering and profit and overhead. For each of the 42 categories there was stated a scheduled value for it, the value of any work completed for which payment was now claimed and the balance required to finish the project. The total of the column listing the work completed for which payment was requested was $84,080. This document, however, did not name or otherwise identify the persons or companies who were the subcontractors to whom payments were due nor was it verified by oath or affidavit.

The Bank, however, did not then make the requested payment to Jaeger and wrote to it on June 25 stating that before the first progress payment could be made the Bank would require "[a] current sworn general contractor's affidavit executed by Herbert W. Jaeger & Associates, Inc., listing all sub-contractors and designating their specific jobs and contract amounts." Thereafter, on July 9 a representative of Jaeger, Milan Jursik, met with the president of the Association and gave him an updated AIA application for payment form which requested $121,405 for all work allegedly completed through July 9. The second AIA application for payment was in the same form as the first, listing the value of work completed for which payment was due in the various categories, but again it failed to name any of those subcontractors who furnished the materials or labor. This application contained a certification by Jaeger's president, Herbert W. Jaeger, sworn to before a notary public, that the

work described in the application had been completed in accordance with the contract and that the payment requested therein was now due. Although they were not introduced into evidence at trial, and are not in the record on appeal, Jursik testified that attached to this document were signed waivers of lien executed by Jaeger and the subcontractors "showing all of the payments that [Jaeger] was asking for on [the AIA] list." The parties were unable to reach an accord at this meeting and Jaeger's representative left with the documents and without the requested payment. The Association wrote to Jaeger on July 12 urging that Jaeger comply with the Bank's request in its letter of July 25 for a sworn general contractor's statement.

On July 18 a meeting was held by representatives of Jaeger, the Association and the Bank to discuss financial matters relating to the rest home project. Herbert W. Jaeger testified that he again presented the AIA document and the lien waivers previously shown to Janac on July 9 and requested the amount due of $121,405. The Bank again declined to make payment on the basis of those documents, stating they did not satisfy the requirements of a sworn general contractor's statement which must specify the names of all subcontractors and the amounts due to each. Jaeger did not thereafter attempt to comply with the request for a general contractor's statement but abandoned work on the project on July 23.

In September 1973 Deerfield Electric Company, Inc., and other subcontractors who had performed work on the project filed suit against the Association, Jaeger, the Bank and others seeking to foreclose mechanics' liens against the subject property. Jaeger filed a separate action in November 1973 to foreclose a mechanic's lien on the subject property against the Association, the Bank and others and for judgment against the Association for breach of the contract for failure to make payments required therein. The Association thereupon filed its counterclaim against Jaeger seeking damages for Jaeger's alleged breach of the construction contract in abandoning the work. These actions were consolidated and following a bench trial judgment was entered awarding Jaeger damages of $242,750.33 and granting it a mechanic's lien against the property. The Association's counterclaim for damages for breach of contract was denied by the trial court and this appeal by the Association followed.

The Association contends that because Jaeger failed to furnish it with a sworn general contractor's statement listing all subcontractors and the amounts due each, as required by section 5 of the Mechanics' Liens Act (Ill. Rev. Stat. 1971, ch. 82, par. 5), it was not entitled to the partial payment it had demanded and could not claim a mechanic's lien or damages for breach of the contract based upon the Association's refusal to pay. The Association further contends that Jaeger itself breached the

contract by abandoning the project and that its counterclaim against Jaeger was erroneously dismissed. We agree.

Section 5 of the Mechanics' Liens Act then provided, in part:

> "It shall be the duty of the contractor to give the owner, and the duty of the owner to require of the contractor, before the owner or his agent, architect or superintendent, shall pay or cause to be paid to said contractor or to his order any moneys or other consideration, due or to become due such contractor, or make or cause to be made to such contractor any advancement of any moneys or any other consideration, a statement in writing, under oath or verified by affidavit, of the names of all parties furnishing materials and labor, and of the amounts due or to become due each." Ill. Rev. Stat. 1971, ch. 82, par. 5 (amended 1975).

■■ Jaeger first contends that section 5 of the Act is not applicable to this case as it was not required to provide a contractor's sworn statement by the terms of its contract with the Association which provided only that Jaeger submit waivers of lien by itself and the subcontractors before receiving progress payments. We find no merit to this contention as the Mechanics' Liens Act becomes a part of every construction contract between an owner and contractor for the erection or improvement of a building. *Robertson v. Huntley & Blazier Co.* (1953), 351 Ill. App. 378, 385, 115 N.E.2d 533, 536; see also *Schiro v. W. E. Gould & Co.* (1960), 18 Ill. 2d 538, 544, 165 N.E.2d 286, 290.

■■ Jaeger next contends that section 4 of the Act permits a contractor to abandon his work and enforce a lien for the value of the work completed where the owner wrongfully withholds payment of money justly due (Ill. Rev. Stat. 1971, ch. 82, par. 4) and that it validly abandoned the project here for nonpayment. It is clear, however, that if the owner requires of the contractor that he furnish a list of subcontractors as described in section 5 of the Act and the contractor fails to comply then the owner may validly discontinue payments to him; if the contractor then stops work he breaches the contract and loses his right to a mechanic's lien. (*Stanley J. Gottschalk Construction Co. v. Carlson* (1929), 253 Ill. App. 520, 530-32; S. Love, Mechanics' Liens in Illinois, par. 124, at 372, par. 62, at 167 (2d ed. 1950).) In this case the Bank's letter of June 25 clearly required from Jaeger a "current sworn general contractor's affidavit * * * listing all subcontractors and designating their specific jobs and contract amounts."

■■ ■ Jaeger contends, however, that no requirement that a section 5 statement be furnished was imposed by the Association. It argues that such a requirement could not properly have been imposed by the Bank on the Association's behalf as the statute only provides that it is the duty of the "owner" to require the statement. The statute does not preclude an agent of an owner from requesting the statement on its behalf and we see

no reason that it should be so construed. (See *Knickerbocker Ice Co. v. Halsey Bros. Co.* (1914), 262 Ill. 241, 246, 104 N.E. 665, 666.) There is no merit to Jaeger's further argument that the Bank did not act on the Association's behalf in requiring the section 5 statement. It is apparent on this record that the Bank was the Association's agent to disburse the proceeds of the construction loan, a common arrangement between an owner and a lender, and that Jaeger was aware of this fact. (See also *Knickerbocker*, 262 Ill. 241, 246, 104 N.E. 665, 666.) Nor do we accept Jaeger's argument that the request for the contractor's statement made by the Bank in its July 25 letter was ineffective because the letter also imposed certain other conditions on payment not contained in the contract, that is, that the Bank would make direct payments to all subcontractors and temporarily withhold 10 percent in doing so. Had Jaeger supplied the requested contractor's sworn statement and the Association then not complied with the contract in making payment, that issue might have become material, but Jaeger did not furnish the statement required of it and the claimed erroneous method of payment of which it now complains did not take place. In our view it could not, in any event, relieve Jaeger of its duty under the statute to give the contractor's sworn statement to the owner.

Finally, Jaeger contends the AIA request for payment form and attached lien waivers submitted by it on July 9 did, in fact, constitute sufficient compliance with section 5 of the Act.

■■ It is well established that the Mechanics' Liens Act must be strictly construed with respect to all the statutory requirements upon which the right to a lien depends. (*North Side Sash & Door Co. v. Hecht* (1920), 295 Ill. 515, 519, 129 N.E. 273, 274; *Components, Inc. v. Walter Kassuba Realty Corp.* (1978), 64 Ill. App. 3d 140, 145, 381 N.E.2d 42, 45.) Section 5 requires that the contractor give the owner a written statement, under oath or verified by affidavit, of the *names* of all parties furnishing material or labor and the amounts due or to become due to each of them. The AIA document submitted by Jaeger did not state the names of any of the parties furnishing work or material. The necessary names cannot be supplied, as Jaeger asserts, by reference to the lien waivers its witness testified were attached to the AIA document because those names would not then have been given under the oath or affidavit of the contractor, Jaeger; the sworn certification of the AIA document verified only that the amounts claimed therein were due to certain trades but without identifying the individuals or companies by name. Nor did the certificate by its terms incorporate names found on any lien waiver forms. Also, we note the purported lien waivers were never offered into evidence at trial. While there was testimony that some lien waivers were submitted to the Association and that the total sum waived in them equalled the payment

requested by Jaeger, the record does not reveal the number or the names of the subcontractors executing them nor whether the sums stated in the lien waivers could be correlated with the figures contained in the AIA document. We do not believe the combination of documents described met the requirements of section 5 of the Act or that the owner would have been protected if it had made the payment to the contractor in reliance thereon.

If the Association had paid the contractor without requiring a statement as provided for in section 5, unpaid subcontractors who had complied with the Act on their part would, notwithstanding such payment, have had a claim against the Association and a right to a mechanic's lien. Such payment, if made, would have been at the Association's risk. Ill. Rev. Stat. 1971, ch. 82, pars. 21, 32 (both amended 1977); *Stanley J. Gottschalk Construction Co. v. Carlson* (1929), 253 Ill. App. 520, 531; see *Liese v. Hentze* (1927), 326 Ill. 633, 638, 158 N.E. 428, 430.

■■ The finding of the trial court that Jaeger was entitled to the progress payment he had requested and that the Association breached the contract in failing to make the payment is against the manifest weight of the evidence and its judgment enforcing a mechanic's lien against the property and assessing damages must be reversed. Further, as it is established by the evidence that Jaeger breached the contract by unjustifiably abandoning work on the project, the Association's counterclaim was erroneously denied and that judgment will be reversed. The cause is remanded with directions that the trial court enter judgment on the counterclaim in favor of the Association and for a new trial solely on the issue of damages under the counterclaim.

Reversed and remanded with directions.

GUILD, P. J., and SEIDENFELD, J., concur.

SUPPLEMENTAL OPINION ON REHEARING

Mr. JUSTICE NASH delivered the opinion of the court:

■■ In our original opinion we determined that the Slovak American Charitable Association, counterplaintiff-appellant, was entitled to judgment on its counterclaim for breach of contract against Herbert W. Jaeger & Associates, Inc., counterdefendant-appellee, and remanded the case for a trial of the issue of damages under the counterclaim and the response to it. We here expand upon our remanding order to point out that as it appears from the record that Jaeger did partially perform the

contract in good faith it would be unjust to deprive Jaeger of the amount of the benefits received from such performance by the Association, less any damages to the Association resulting from Jaeger's failure to complete the contract. See *South Beloit Electric Co. v. Lar Gar Enterprises, Inc.* (1967), 80 Ill. App. 2d 367, 375, 224 N.E.2d 306, 311; *Royal Ornamental Iron, Inc. v. Devon Bank* (1975), 32 Ill. App. 3d 101, 107, 336 N.E.2d 105, 110; 12 Ill. L. & Prac. *Contracts* §406, at 554 (1955). In all other respects we adhere to our original opinion.

GUILD, P. J., and SEIDENFELD, J., concur.