SWANSEA CONCRETE PRODUCTS, INC., *et al.*, Plaintiffs-Appellees, *v.* ROBERT C. DISTLER *et al.*, Defendants-Appellants (Concrete, Inc., *et al.*, Defendants).

Fifth District   No. 5—83—0579

Opinion filed August 7, 1984.

928

JONES, J., specially concurring.

William L. Wimmer, of East St. Louis, for appellants.

Phillip A. Montalvo, of Belleville, for appellees.

PRESIDING JUSTICE WELCH delivered the opinion of the court:

The main question presented by this appeal is whether a subcontractor who fails to perfect a mechanics' lien is entitled to recover a money judgment from the property owner if that relief is requested at trial. We hold that he may be so entitled and that the trial court did not err in granting that relief in this case.

Defendants Robert C. and Carolyn S. Distler appeal from a judgment against them for $1,871.72 in favor of plaintiff Swansea Concrete Products, Inc. (Swansea), and for $2,553.18 in favor of plaintiff Hill-Thomas Lime & Cement Co. (Hill-Thomas). The plaintiffs' original complaint sought to impose mechanics' liens on property owned by the Distlers and improved with material provided by the plaintiffs. After trial, however, the circuit court of St. Clair County held that statements by the Distlers or their agent, codefendant Investors Savings & Loan Association (Investors), equitably estopped the Distlers from denying payment to the plaintiffs for that material. The court granted the plaintiffs money judgments against the Distlers rather than liens against their property, and the plaintiffs amended their pleadings accordingly.

The Distlers now argue that (1) the finding of an estoppel based on verbal promises violates the Statute of Frauds; (2) the plaintiffs' failure to meet the notice requirements of the Mechanics' Liens Act (Ill. Rev. Stat. 1983, ch. 82, par. 1 *et seq.*) deprives them of statutory and equitable relief; and (3) the judgment improperly forces them to pay more than the contract price for the construction of their building. The Statute of Frauds issue, being an affirmative defense, has been waived by the Distlers' failure to plead it at trial. (Ill. Rev. Stat. 1983, ch. 110, par. 2—613(d); *Terminal Freezers, Inc. v. Roberts Frozen Foods, Inc.* (1976), 41 Ill. App. 3d 981, 354 N.E.2d 904.) Their attempt to raise that defense by filing an amended answer after trial was of no effect, because that answer was filed months after the notice of appeal was filed and the circuit court had lost jurisdiction of

the matter. *Hecht v. Hecht* (1977), 49 Ill. App. 3d 334, 364 N.E.2d 330.

In 1980, the Distlers engaged Town & Country Construction (Town & Country), a general contractor, to build a quick shop and automobile repair garage in Shiloh, Illinois. The contract price was $51,400. That amount was to be loaned by Investors. Throughout October and November, Town & Country contacted subcontractors and suppliers, including Hill-Thomas and Swansea. Mrs. Distler spoke to Robert Thomas of Hill-Thomas before a representative of Town & Country did. She selected a particular type of brick at that time and told Thomas the identity of the general contractor at the project. Thomas testified that, as he was unfamiliar with Town & Country, he wanted Mrs. Distler to obtain a lien waiver from him before making payments under the contract. He also stated that he expressed the same concerns to Investors personnel Paul Murphy and Sharon Cleveland. According to Thomas, in two conversations with Ms. Cleveland in October he "was led to assume that we were still going to get our money." Ms. Cleveland denied speaking to Thomas about this matter in October, and she recalled that she first learned in November or December that Hill-Thomas was a supplier. Murphy was not certain when he talked to Thomas, but he felt that Thomas knew that Investors normally required lien waivers from subcontractors before disbursing funds to contractors.

Swansea's David Fournie was contacted by Town & Country on November 3. He had not previously spoken with the Distlers. Like Thomas, Fournie did not know anything about Town & Country, so he asked them for a list of references, which included Investors. Fournie called Investors that day. He did not remember the name of the person with whom he talked, but that person told him that Investors was handling all disbursements on the Distler project, and no payment would be made to Town & Country without requiring lien waivers from material suppliers. According to Fournie, Swansea would not have done business with Town & Country without those assurances. Fournie did not have any dealings with Murphy and did not speak to Ms. Cleveland or Mrs. Distler until December 1980.

On November 6, the Distlers paid Town & Country $45,000, of which $40,000 came from Investors and $5,000 was from the Distler's personal funds. Town & Country had not yet given the Distlers or Investors an affidavit listing the subcontractors and the amounts due or to be due them (Ill. Rev. Stat. 1983, ch. 82, par. 5), although Robert Rogers, the owner of Town & Country, executed waivers of mechanics' liens for both checks received. No lien waivers were obtained

from Town & Country's subcontractors during this period.

Some time in November or December, Mrs. Distler learned that the subcontractors were not being paid. She called Robert Thomas in early December, and he explained that he had received no money from Town & Country. Thomas testified that Mrs. Distler said that there would be enough money to complete the job, and if he had any materials ordered by Town & Country but not delivered, he should deliver them. Mrs. Distler denied representing to Thomas that he would get paid.

On December 12, 1980, Mrs. Distler obtained two contractors' affidavits from Rogers. One of the affidavits listed Town & Country as the sole contractor for the project. This affidavit was presented to Investors. The other affidavit, listing approximately 20 subcontractors and suppliers, was taken by Mrs. Distler to her attorney's office. Sharon Cleveland testified that she never saw the second affidavit prior to trial. Neither affidavit itemized payments made, due or to be due to the subcontractors. Mrs. Distler recalled that when she asked Rogers for an affidavit, he replied that no money was owed any subcontractors because he had paid all of them.

Mrs. Distler discharged Town & Country on December 15, and, as she expressed it at trial, she became the job's general contractor. The following day, she telephoned the subcontractors so that they would not order any more supplies, according to her testimony. Robert Thomas stated that during this call, Mrs. Distler said that Town & Country had been dismissed and informed him that he would get paid. Mrs. Distler testified that she did not assure Thomas of payment then. David Fournie indicated that Mrs. Distler asked him for a copy of overdue bills that day and also verified that they would be taken care of. At trial, Mrs. Distler did not remember asking Fournie for those bills.

After his conversation with Mrs. Distler, Thomas contacted someone at Investors, who told him that they were not certain about the status of the Distler job. David Fournie spoke to Sharon Cleveland on December 19. She said that funds still remained on the construction loan, but they could not be disbursed without the Distlers' approval. Ms. Cleveland, who handled the Distler loan after the discharge of Town & Country, paid the subcontractors directly from Investors with the authority of the Distlers. These disbursements, made only upon the presentation of documented bills and lien waivers, exhausted the $51,400 loan.

Hill-Thomas recorded its lien claim on February 9, 1981, and presented a copy of it to Mr. Distler on February 7. Its last delivery at

the Distler job was on December 12, 1980. Swansea recorded its claim on February 19, 1981. It had last delivered material on November 25, 1980. Swansea did not serve a copy of any notice on the Distlers, either personally or by registered or certified mail. Neither plaintiff gave written notice of its claim to Investors. The Distlers eventually completed the building at a cost of $58,386.84, or $6,986.84 more than the original contract price.

■ According to the Distlers, the plaintiffs failed to comply with the notice provisions of the Mechanics' Lien Act. (See generally Ill. Rev. Stat. 1983, ch. 82, par. 24; *Hill Behan Lumber Co. v. Irving Federal Savings & Loan Association* (1984), 121 Ill. App. 3d 511, 514, 459 N.E.2d 1066, 1069.) We will assume, for the sake of argument, that this is true. Nonetheless, the plaintiffs' failure to perfect the requested mechanics' liens does not bar them from seeking a money judgment.

■ It has often been stated that where a subcontractor fails to perfect a mechanics' lien, he may not be granted an equitable lien in a situation where it would have been appropriate to impose a mechanics' lien had there been compliance with the statute. (*Hill Behan Lumber Co. v. Marchese* (1971), 1 Ill. App. 3d 789, 275 N.E.2d 451; *Suddarth v. Rosen* (1967), 81 Ill. App. 2d 136, 224 N.E.2d 602.) The question presented here is whether that noncompliance also prevents the subcontractor from recovering money damages.

■ On one hand, it could be argued that authorities such as *Marchese* and *Suddarth* remove from mechanics' lien cases all equitable principles, including those which could support a money judgment. The rights created by the Mechanics' Liens Act are purely statutory in nature and are not governed by the rules of equitable jurisprudence. (*Wingler v. Niblack* (1978), 58 Ill. App. 3d 287, 374 N.E.2d 252.) If this is so, then it would seem to follow that the subcontractor's sole remedy against the property owner is through the Act. But the cases which have reached exactly that conclusion have reasoned that the subcontractor has no contractual relationship with the owner which would give rise to a legal recovery. (*Suddarth v. Rosen* (1967), 81 Ill. App. 2d 136, 224 N.E.2d 602; *Bates & Rogers Construction Corp. v. North Shore Sanitary District* (1980), 92 Ill. App. 3d 90, 414 N.E.2d 1274.) Nor do the average subcontractor's limited dealings with the owner give rise to any equitable relief, because the owner's mere knowledge and acceptance of the work will not create an estoppel. (*Vanderlaan v. Berry Construction Co.* (1970), 119 Ill. App. 2d 142, 255 N.E.2d 615.) In this case, the plaintiffs, albeit without a contract with the Distlers, dealt directly with them after they discharged

Town & Country and assumed the duties of general contractor. Unlike the typical subcontractor, the plaintiffs can thus be said to have an equitable remedy against the owners beyond the relief provided by the Act. *Cf. Calacurcio v. Levson* (1966), 68 Ill. App. 2d 260, 215 N.E.2d 839 (plaintiff who dealt directly with owner allowed equitable lien).

This result is not changed by *Wise v. Jerome* (1955), 5 Ill. App. 2d 214, 125 N.E.2d 292. In that case, the court concluded that "where plaintiff has failed to establish his mechanic's lien, the court has no authority, in that suit to enter a money judgment or personal decree." (5 Ill. App. 2d 214, 222, 125 N.E.2d 292, 297.) Later cases have limited this statement to the facts in *Wise*, where the mechanics' lien claimant did not request money damages. The court in *Wise* lacked the authority to grant a money judgment because the plaintiff sought only to foreclose a mechanics' lien, and, having failed to perfect his lien, he could not receive relief not prayed for. (See *Swords v. Risser* (1977), 55 Ill. App. 3d 676, 371 N.E.2d 182; *Douglas v. Papierz* (1970), 121 Ill. App. 2d 242, 257 N.E.2d 570; *Rozema v. Quinn* (1964), 51 Ill. App. 2d 479, 201 N.E.2d 649.) As the plaintiffs' original and amended complaints sought mechanics' liens or money judgments, the trial court was empowered to grant either type of relief against the Distlers.

▆▆▆ The Distlers obliquely challenge the sufficiency of the evidence upon which the court found an equitable estoppel. It is more accurate to say that the court's decision was based on the doctrine of promissory estoppel, for the statements by the Distlers and Investors had to do with future events. An action for promissory estoppel will lie against a party who makes an unambiguous promise relied upon by another. The reliance must be expected and foreseeable by the party making the promise and the party to whom the promise is made must rely upon the promise to his detriment. (*Levitt Homes, Inc. v. Old Farm Homeowners' Association* (1982), 111 Ill. App. 3d 300, 314-15, 444 N.E.2d 194, 204.) Whether these factors are present is a question of fact for the trial court, and its decision will not be reversed unless against the manifest weight of the evidence. (*Illinois Valley Asphalt, Inc. v. J.F. Edwards Construction Co.* (1980), 90 Ill. App. 3d 768, 770, 413 N.E.2d 209, 211.) There was sufficient evidence from which the court could have found that the plaintiffs foreseeably relied to their detriment on promises by the Distlers or Investors concerning the method of payment to Town & Country or its subcontractors. Its findings must be affirmed.

▆▆▆ Finally, the Distlers feel that the judgment is inappropriate

because they have paid more than the original contract price for the construction of their building. They point to section 21 of the Mechanics' Liens Act (Ill. Rev. Stat. 1983, ch. 82, par. 21), which limits the owner's liability for subcontractors' liens to that original contract price, subject to certain exceptions not pertinent here. Initially, there is some question whether this statutory limit applies to a money judgment based on equitable principles. But, even if that limit so applies, it does not protect the Distlers. Where the owner pays the general contractor without obtaining an affidavit from him listing the subcontractors and amounts due or to be due them (Ill. Rev. Stat. 1983, ch. 82, par. 5), those payments are at the owner's risk. (Ill. Rev. Stat. 1983, ch. 82, par. 32; *Deerfield Electric Co. v. Herbert W. Jaeger & Associates, Inc.* (1979), 74 Ill. App. 3d 380, 392 N.E.2d 914.) The Distlers paid or caused to be paid to Town & Country $45,000, or virtually all of the contract price, without demanding an affidavit from Rogers. They cannot now complain that they are compelled to pay more than that price. *Brady Brick & Supply Co. v. Lotito* (1976), 43 Ill. App. 3d 69, 356 N.E.2d 1126.

In conclusion, a subcontractor who fails to perfect a mechanics' lien but has dealt directly with the property owner so as to give rise to a legal or equitable theory of recovery may receive a money judgment against the owner if requested. For this reason and others expressed above, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

KASSERMAN, J., concurs.

JUSTICE JONES, specially concurring:
I concur in the result and reasoning of the majority opinion; however, for the term "foreseeable," as used in this opinion, I would substitute "reasonable expectation."