ABBOTT ELECTRICAL CONSTRUCTION COMPANY, Plaintiff-Appellant, v. ALAN B. LADIN et al., Defendants (First National Bank of Highland Park, as Trustee, et al., Defendants-Appellees).

Second District   No. 2—85—0064

Opinion filed June 24, 1986.—Rehearing denied July 29, 1986.

N. Arthur Rubinoff, of Chicago, for appellant.

Joseph I. Adler and Charles E. Adler, both of Chicago, for appellees.

JUSTICE HOPF delivered the opinion of the court:

Plaintiff, Abbott Electrical Construction Co., Inc., performed electrical work for a lessee in a building owned by defendants, First National Bank of Highland Park (trustee), as trustee, and Larry and Elaine Klairmont (the Klairmonts). When Abbott did not receive payment for the work from the lessee, it filed a claim for lien and complaint for foreclosure against, among others, the trustee and the Klairmonts. The trial court held in favor of the defendants, and Abbott appealed.

On appeal Abbott asserts that the trial court erred in four ways: (1) in finding that the contractor's failure to supply the owner with a contractor's affidavit defeated plaintiff's claim; (2) in basing its final order, in part, upon an affirmative defense that was not set forth in defendant's answer; (3) in finding that plaintiff's claim was defeated because plaintiff could not separate lienable and nonlienable work; and (4) in failing to liberally construe the Mechanic's Liens Act despite plaintiff's compliance with the statutory requirements for a valid mechanic's lien.

Larry and Elaine Klairmont were the holders of the beneficial interest in Trust No. 1191 at First National Bank of Highland Park. The trust held the legal title to improved real estate located in Highland Park. The improvements consisted of a three-story building containing offices, shops, and a first floor restaurant. Prior to early 1982, the restaurant had been vacant for over a year and had been closed on two or three different occasions before that. Larry Klairmont had acquired the restaurant equipment through a foreclosure proceeding.

In April 1982 a real estate broker contacted Larry Klairmont, on behalf of defendant Alan Ladin, regarding the purchase of the assets of the restaurant. Klairmont ultimately entered into an agreement with Ladin whereby the two of them set up a corporation, named it Alan's Restaurant Corporation, and each contributed to capitalization. Alfred Klairmont, Larry's son, became the secretary of the corpora-

tion. The assets of the restaurant were sold to the corporation, and the corporation entered into a lease agreement with the trustee, First National Bank of Highland Park. Larry Klairmont accepted $25,000 down and a $125,000 chattel mortgage for the sale of the restaurant equipment.

Alfred Klairmont managed real estate properties for his father, Larry, who had his own real estate business. One of the properties Alfred managed was the Highland Park building which housed the restaurant relevant to this suit. As manager, Alfred attended to the day-to-day management, leasing, maintenance, *et cetera*, of his father's properties. He visited the properties on a regular basis. Also, in his capacity as secretary of Alan's Restaurant Corporation, Alfred discussed the opening of the restaurant with Alan Ladin.

Around the time Alan Ladin signed the lease for the restaurant, he contacted Marvin Kaplan of Abbott Electrical Construction Company (Abbott) about doing some work in the restaurant. Abbott applied for the city permit to do certain electrical work and reached an agreement with Ladin as to the work to be done. The job was to be charged on a time and material basis. Abbott completed the work by mid-July and billed Alan's Restaurant, but never received any payment. Apparently, the Alan's Restaurant venture did not succeed because, according to Alfred Klairmont's testimony, the restaurant remained in the Highland Park building for less than a year.

Abbott filed a claim for lien in the amount of $7,746 in October 1982 and a complaint for foreclosure of the lien in May 1983 against Alan Ladin, Alan's Restaurant Corporation, First National Bank of Highland Park as Trustee, Guaranty Federal Savings & Loan Association, and Larry and Elaine Klairmont. On September 18, 1984, after a bench trial, a default judgment was entered against Alan Ladin, Alan's Restaurant Corporation, and Guaranty Federal for the full amount of the lien. Judgment was entered in favor of First National Bank of Highland Park and the Klairmonts on grounds that plaintiff had not complied with the statutory requirements for a mechanic's lien. Abbott filed a motion to reconsider, and the court added, as a new ground for its judgment, a finding that the lien claim failed since plaintiff had not been able to separate lienable work from nonlienable work. After both parties briefed the issues the court denied plaintiff's motion to reconsider, and this appeal followed.

■ Abbott first argues that the trial court erred when it found that Abbott's failure to supply the Klairmonts with a statutorily prescribed contractor's affidavit defeated its claim. Abbott reasons that its duty to provide the affidavit was never triggered.

The "Act relating to contractors' and material men's liens, known as mechanics' liens" (Ill. Rev. Stat. 1983, ch. 82, par. 1 *et seq.*) (the Act), which becomes part of every construction contract between an owner and a contractor (*Deerfield Electric Co. v. Herbert W. Jaeger & Associates, Inc.* (1979), 74 Ill. App. 3d 380, 392 N.E.2d 914), provides in pertinent part:

> "It shall be the duty of the contractor to give the owner, and the duty of the owner to require of the contractor, before the owner or his agent, architect or superintendent, shall pay or cause to be paid to said contractor or to his order any moneys or other consideration, due or to become due such contractor, or make or cause to be made to such contractor any advancement of any moneys or any other consideration, a statement in writing, under oath or verified by affidavit, of the names and addresses of all parties furnishing materials and labor, and of the amounts due or to become due each." (Ill. Rev. Stat. 1983, ch. 82, par. 5.)

It is uncontested that Abbott did not give the Klairmonts a contractor's affidavit. Defendants maintain that the duty imposed upon the contractor by the Act constitutes a condition precedent to enforcement of a lien and Abbott's failure to comply with this duty bars its claim.

It was long ago established that the section 5 requirement for a contractor's affidavit was:

> "[F]or the benefit of the owner as well as the subcontractor *** [and that the contractor's failure to make] such statements or waivers *** will not forbid a lien where no demand is made by the owner for them, nor any claim even made that debts to subcontractors existed. In such a case these 'prerequisites' will be considered waived. *** The words referred to are simply a caution to the owner or loan agent *** to demand them if he wanted them." (*Gillespie v. Patrick* (1909), 146 Ill. App. 290, 296.)

These principles were echoed in *Fleming v. Galloway* (1918), 212 Ill. App. 226, 233, and *Hall v. Harris* (1926), 242 Ill. App. 315, 319. It is uncontested that the Klairmonts did not request a contractor's affidavit from Abbott.

Defendant insists that the rules stated above apply only when the contractor has made a demand for payment directly on the owner. In this case, Abbott's contract was with the Klairmonts' lessee, Alan's Restaurant Corporation, and the corporation was billed by Abbott. The Klairmonts claim that without a payment demand the owner's

duty to request the contractor's affidavit does not arise and, in a case like this, the statute can only have meaning if it imposes a condition precedent on the contractor. We find, however, that this case does not turn on a demand for payment, but rather on the owner's knowledge.

Section 1 of the Act grants a lien to anyone who contracts "with one whom the owner has authorized or knowingly permitted to contract" (Ill. Rev. Stat. 1983, ch. 82, par. 1) for the provision of labor, services and material for the improvement of the owner's property. The words "knowingly permit" are to be understood in the general sense of being aware of and consenting to the initiation of such improvements. (*Armco Steel Corp. v. La Salle National Bank* (1975), 31 Ill. App. 3d 695, 698, 335 N.E.2d 93.) The trial court here found, and we agree, that "there's enough evidence in this record to put on notice the Klairmont interest of the work in progress." Alfred Klairmont was an agent for his father in the management of the Highland Park building. He was also secretary of the corporation which set up the restaurant and contracted with Abbott. The testimony showed that the Klairmonts were extremely anxious to get the restaurant, which had been sitting idle for some time, open and producing income. Logically, they monitored progress of the remodeling/repair work closely, in anticipation of opening day. Albert testified that he visited his father's properties on a regular basis and saw workmen on the restaurant premises when he was there. As noted by the trial court, the elder Klairmont "knew or should have known there was electrical work" being done. On these facts we conclude that the Klairmonts knowingly permitted Ladin to contract with Abbott for electrical work to be performed in the Highland Park building owned by them.

By knowingly allowing the work to be done, the Klairmonts recognized a benefit to their building. They cannot now defeat Abbott's claim merely on the basis that demand for payment was made on their lessee rather than directly upon them. It was incumbent upon the Klairmonts to request a contractor's affidavit from Abbott if they wanted such an affidavit for their own protection. This obligation was not dependent upon a direct demand for payment. Since the duty to provide an affidavit to the Klairmonts never arose, Abbott's failure to provide such a document was not a condition precedent to a valid claim for lien.

Admittedly, the cases which set forth the rules controlling the question at issue are older cases, and the question has not frequently been raised since the rules were established. But, *Deerfield Electric Co. v. Herbert W. Jaeger & Associates, Inc.* (1979), 74 Ill. App. 3d

380, 392 N.E.2d 914, which the trial court relied upon in denying Abbott's lien claim, is not inconsistent with the old rules. The trial court read *Deerfield* as construing the section 5 contractor's affidavit requirements to be a condition precedent to a valid mechanic's lien claim by a contractor. *Deerfield*, however, did not deal with the situation where the owner never requested the contractor's affidavit. In fact, the opinion states:

> "It is clear, however, that *if the owner requires* of the contractor that he furnish a list of subcontractors as described in section 5 of the Act and the contractor fails to comply then the owner may validly discontinue payments to him; if the contractor then stops work he breaches the contract and loses his right to a mechanic's lien." (Emphasis added.) (74 Ill. App. 3d 380, 384, 392 N.E.2d 914.)

In *Deerfield*, an agent of the owner had clearly requested an affidavit from the contractor who failed to comply with the request and thus lost his right to a mechanic's lien. If anything, *Deerfield* reiterated the rule that a mechanic's lien will be defeated by the contractor's failure to comply with section 5 only when the owner has requested a contractor's affidavit. The case did not make compliance with section 5 a condition precedent to a valid lien claim. We conclude that the trial court erroneously imposed the section 5 requirement as a condition precedent to Abbott's claim for a mechanic's lien.

In light of our decision that Abbott's lien claim is not barred by its failure to provide the Klairmonts with a contractor's affidavit, we need not consider Abbott's contention that the affidavit issue was improperly raised at trial.

■ Abbott also argues that the trial court erred in denying its lien claim on the basis that it had been unable at trial to separate lienable work from nonlienable work. Evidence was presented at trial that Abbott did a small amount of electrical work on neighboring property that did not belong to the Klairmonts. Also, Marvin Kaplan, an electrical contractor and owner of Abbott, was not able on cross-examination to state separate charges for each individual task performed at the Highland Park building. Thus, the specific costs of the off-site work could not be ascertained during the trial. Citing *BRL Carpenters, Ltd. v. American National Bank & Trust Co.* (1984), 126 Ill. App. 3d 137, 466 N.E.2d 1166, the trial court held that since the nonlienable work could not be separated from the lienable work, the entire lien was unenforceable. In *BRL* the contractor performed both lienable and nonlienable work but did not keep records of the allocation of time to each kind of work. The *BRL* court cited the rule that

lienable work must be separable from nonlienable work where a contract calls for both kinds of services, and the total amount due under the contract must be apportionable between the lienable and nonlienable items. (*Verplank Concrete & Supply, Inc. v. Marsh* (1976), 40 Ill. App. 3d 742, 353 N.E.2d 27.) The *BRL* court concluded that the amount claimed there could not be properly apportioned and the entire lien claim failed.

We note first that in the instant case, unlike *BRL*, the contract did not call for both lienable and nonlienable work. The separability issue here rises out of Abbott's electrical work on a proposed outdoor eating area immediately adjacent to the restaurant. Abbott mistakenly believed the property belonged to the building owners. Moreover, while the trial court in the instant case found that the evidence failed to separate and apportion Abbott's work and charges between the Klairmont property and the off-site property, the evidence also indicated that such an apportionment *could* be made.

Kaplan testified that he contracted to do the electrical work for Alan Ladin at the Klairmont property on a time and material basis. When explaining about charges for the job, Kaplan stated that he had no records of how long each individual task took, or what materials each task required, because charges for a time and material job are "just collectively what the job is." When he was cross-examined about the charges for each individual work item, Kaplan was unable to give individual figures. He indicated that he could not then and there break down the total figure he had in front of him. However, he also asserted that "[i]f I can have an hour to sit down and extract, then I can put together unit prices." As counsel cross-examined on a total of 34 different work items, Kaplan repeatedly insisted that he could figure out the charges for each one but could not answer on the spot. When asked why he could not state individual charges, Kaplan replied that he didn't know (from the figures in front of him) the number of feet a wire had been run. He stated: "I don't know the footages. *** [I]t really is determined on the footages. *** If we run ten feet, we know how many labor units to apply for the ten feet. If we run two hundred and fifty feet, we then know how many units to apply ***."

It is evident to us that Kaplan had the capability of figuring out a separate charge for each work item that was performed. He did not have those figures at his fingertips at trial because charges for the work had originally been based on time, or man-hours, spent on the job, and the cost of materials. If Kaplan had had some time, and access to the dimensions for each task, he could have assigned unit charges (charges per task). A unit price could have been developed for

those specific jobs which were done off the Klairmont property and thus were not lienable. In summary, the nonlienable work could have been separated from the lienable work, and the total amount of Abbott's charges could have been apportioned accordingly.

While plaintiffs were not able to show separability and apportionment during the trial, they should be allowed to do so. In *Condee, Inc. v. Chrisman* (1976), 38 Ill. App. 3d 729, 348 N.E.2d 461, a lessee contracted for electrical work and then went bankrupt, and the contractor sued the lessor. There was a question as to whether the building where the improvements were made was entirely on lessor's property. The court held: "Unless it is impracticable to do so, a lien arising from improvements to a building resting on several tracts of land should be apportioned among the owners of those tracts." (38 Ill. App. 3d 729, 730, 348 N.E.2d 461.) The case was remanded for consideration of apportionment. Likewise, in the case at bar, the improvements were made on two separate tracts of land. The lien should be apportioned according to which work was done on which property. This will require the Klairmonts to pay only for work actually done on their property, which is the lienable work.

Not only is it permissible to apportion the lien, but to allow plaintiffs to show separability at this point in time would be in keeping with section 39 of the Act which states: "This act is and shall be liberally construed as a remedial act." (Ill. Rev. Stat. 1983, ch. 82, par. 39.) While the statute is to be strictly construed with regard to the requirements it imposes for creation of a valid lien (*M. L. Ensminger Co. v. Chicago Title & Trust Co.* (1979), 74 Ill. App. 3d 677, 393 N.E.2d 663), once those requirements have been strictly fulfilled, the statute should be given a liberal construction so that justice will be done between the parties. (*First Federal Savings & Loan Association v. Connelly* (1983), 97 Ill. 2d 242, 246, 454 N.E.2d 314; *Miller v. Reed* (1973), 13 Ill. App. 3d 1074, 302 N.E.2d 131.) As stated by the *Connelly* court:

> "[T]he purpose of the Act 'is to permit a lien upon premises where a benefit has been received by the owner and where the value or condition of the property has been increased or improved by reason of the furnishing of labor and materials.' *Colp v. First Baptist Church* (1930), 341 Ill. 73, 76-77." *First Federal Savings & Loan Association v. Connelly* (1983), 97 Ill. 2d 242, 246, 454 N.E.2d 314.

■ In the case now before us, the facts indicate that Abbott had a valid contract to perform work on the Klairmont property, that it performed the contract, and that it has never been paid for the work

completed. Abbott did the type of work protected by the Mechanics' Liens Act (Ill. Rev. Stat. 1983, ch. 82, par. 1 *et seq.*), complied with the requirements for a valid lien, and should not now be entirely prohibited from enforcing its lien because of the inadvertent performance of some of the work on property not belonging to defendants. Abbott's lien should be enforced to the extent the Klairmont property received the benefit of Abbott's labors.

Accordingly, we reverse the judgment entered by the trial court of Lake County and remand this matter for proceedings to consider apportionment of the lien.

Reversed and remanded.

NASH, P.J., and LINDBERG, J., concur.