Michael NEWTON, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 2–283A65.

Court of Appeals of Indiana, Second District.

Nov. 29, 1983.

(2) whether the trial court abused its discretion in finding the seven-year-old prosecutrix competent to testify;

(3) whether the trial court erred in allowing the prosecutrix to use anatomically correct dolls to demonstrate the crimes;

(4) whether the trial court erred in allowing the State to impeach Newton's credibility with statements which had been previously ordered suppressed;

(5) whether the verdict was supported by sufficient evidence; and

(6) whether the trial court abused its discretion in sentencing Newton.

We affirm.

Reginald B. Bishop, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Judge.

The appellant, Michael Newton (Newton), was convicted of child molesting, a class B felony, I.C. 35–42–4–3(a) (Burns Code Ed., Supp.1983) and incest, a class D felony I.C. 35–46–1–3 (Burns Code Ed., Repl.1979). He was sentenced to concurrent terms of ten years for the class B felony and two years for the class D felony. This appeal raises the following issues:

(1) whether Indiana's child molesting statute is constitutional;

### I.

Newton initially attacks the constitutionality of the child molesting statute, I.C. 35–42–4–3 (Burns Code Ed., Supp.1983) alleging the statute does not require an element of *mens rea.* Newton's argument is untimely.

 A challenge to the constitutionality of a statute defining a crime must be made by written motion to dismiss filed prior to the arraignment and plea. *Marchand v. State,* (1982) Ind.App., 435 N.E.2d 284; *Salrin v. State,* (1981) Ind.App., 419 N.E.2d 1351. Newton first raised the issue of constitutionality in his appellate brief. Thus, his failure to file a motion to dismiss relating to the statute's constitutionality precludes his challenge on appeal.[1]

---

1. Newton also contends this issue is properly raised for appellate review as fundamental error. While a conviction under an unconstitutional statute might well constitute fundamental error, that is not the present case. Newton's asserted error is without merit.

Our supreme court has previously held the omission of words of culpability from a statute defining a crime does not exclude guilty knowledge as an essential element of such crime.

"In Indiana, all crimes are statutory, but this does not render merely *malum prohibitum* those crimes that are, and always were, *malum in se.* That which is merely malum prohibitum, i.e. an offense only because prohibited by statute, does not require intent and knowledge, unless specified by the prohibiting statute. However, that which is malum in se, i.e. inherently and naturally evil as adjudged by the senses of a civilized society, is wrong and criminal by reason of such knowledge or intent; and such crimes taken over from the common law,—the traditional crimes, including robbery and theft—have always included the *mens rea* as an element. It follows, and has been so held, that the omission of such words as 'knowingly' and 'intent' from a statute defining a crime is not conclusive on whether or not guilty knowledge is an essential element of such crime. Whether or not criminal intent is an element of a statutory crime is a matter of statutory construction and must be determined in view of the legislative intent. 22 C.J.S. Criminal Law § 30.

## II.

■ Newton further objects to the trial court's determination of the competency of the prosecuting witness, T.M. T.M. was seven years of age at the time of the trial. By Indiana statute children under ten are not competent witnesses unless it appears they understand the nature and obligation of the oath, I.C. 34–1–14–5 (Burns Code Ed., Supp.1983), made applicable to criminal proceedings by I.C. 35–1–31–3 (Burns Code Ed., Repl.1979). The determination of whether a child under the age of ten is a competent witness is entrusted to the discretion of the trial court. This court will reverse only where there is no evidence from which the trial court could have found that the child understood the nature and obligation of the oath. *Johnson v. State,* (1977) 265 Ind. 689, 359 N.E.2d 525.

■ Newton, recognizing the statutory requirement for competency, argues competency further requires a showing the child witness has sufficient mental capacity to perceive, to remember and to narrate the incident she has observed. Citing *Ware v. State,*[2] (1978) 268 Ind. 563, 376 N.E.2d 1150, for this contention, Newton maintains the child witness did not meet this standard.

· ■ *Ware* is not applicable because it addresses the issue of a witness' asserted mental incompetency, as opposed to incompetency because of age. Rather, when only the age of the witness triggers the question of competency, it remains solely an inquiry into the child's understanding of the nature and obligation of the oath. *See Staton v. State,* (1981) Ind., 428 N.E.2d 1203; *Bowers v. State,* (1982) Ind.App., 435 N.E.2d 309; *Bennett v. State,* (1980) Ind.App., 409 N.E.2d 1189; *Fox v. State,* (1980) Ind.App., 413 N.E.2d 665. The further probe into a child's mental competency to perceive, to remember and to narrate is required only if the child's mental competency is specially drawn into issue.

■ In the instant case, the age of the prosecuting witness called for a determination of her statutory competency as a child witness. Newton, as challenger of the witness' competency, bore the burden of producing evidence of mental incompetency. *Ware.* Newton argues the witness' faulty memory regarding the incident demonstrates her mental incompetency. We disagree. Faulty memory alone goes to the weight and credibility of her testimony, not to her mental competency.

■ Therefore, lacking evidence of mental incompetency T.M. need only satisfy the statutory requirement for competency. Examination of the transcript reveals that sufficient evidence existed for the trial court's finding of competency. The trial court and the State elicited responses from T.M. that demonstrated her ability to distinguish the truth from lies. Their examination further

"The statute prohibiting robbery, as well as the offense against property statutes, as they apply to thefts, are adoptive of the common law. Both require criminal intent and knowledge, whether specified by the wording of the statute or not."

*Gregory v. State,* (1973) 259 Ind. 652, 291 N.E.2d 67, 68–69. *See also, Rogers v. State,* (1978) 267 Ind. 654, 373 N.E.2d 125, *Byassee v. State,* (1968) 251 Ind. 114, 239 N.E.2d 586.

Newton was charged with child molesting under I.C. 35–42–4–3(a) (Burns Code Ed., Supp. 1983) and specifically with performing deviate sexual conduct. As such, the offense is adoptive of the common law offense of sodomy. Therefore, the offense requires *mens rea* whether or not specified by the wording of the statute.

2. I.C. 34–1–14–5 (Burns Code Ed., Supp.1983) provides that persons insane at the time they are offered as witnesses are not competent witnesses. However, in *Grecco v. State,* (1960) 240 Ind., 584, 589, 166 N.E.2d 180, 182 our supreme court stated:

"[W]hile the statute makes an insane person incompetent as a witness, the modern view which is now prevalent and supported by the weight of authority, is that a person affected with insanity or mental illness, notwithstanding the positive prohibition of the statute (as to persons insane at the time they are offered as witnesses), may be a competent witness depending entirely on his or her mental condition as determined by the court at the time of trial."

Thus, evidence of the proffered witness' capacity to perceive, remember and narrate, may indeed be relevant on the issue of mental competency. *See generally,* M.J. Seidman, The Law of Evidence in Indiana, 1977, p. 78.

revealed T.M. understood her obligation in testifying under oath.

It was not an abuse of discretion by the trial court to permit T.M. to testify.

### III.

■ Newton argues the trial court erroneously permitted the child witness to testify with the aid of anatomically correct dolls. On appeal, this argument is predicated upon various bases. However, grounds not raised in the trial court are not available for challenge on appeal. *Davidson v. State,* (1982) Ind., 442 N.E.2d 1076; *Brown v. State,* (1981) Ind., 417 N.E.2d 333.[3] Therefore, we restrict our examination to Newton's trial objection which was:

> "[I]f the alleged victim is competent to testify, I don't think the use of the dolls would be necessary, if she's competent to testify as to the facts and what happened. She's testified that she first saw the dolls in the Prosecutor's Office, has practiced with them a couple times. And, I think, if she's competent to testify, her statements as to what happened would be sufficient."

Record at 239–240.

Liberally construed, his claim appears to be 1) the victim's use of the dolls at trial was unnecessary in light of the trial court's ruling she was a competent witness, and 2) her practicing with the dolls before trial was improper because he did not have the opportunity to cross examine and confront the witness.

■ Competency of a witness and the use of demonstrative evidence are not interdependent or particularly relevant to one another. Demonstrative evidence is admissible if the item is sufficiently explanatory or illustrative of relevant testimony to be of potential help to the trier of fact. *Snyder v. State,* (1979) Ind.App., 393 N.E.2d 802. Such a foundation was laid for the victim's use at trial of the anatomical dolls.

■ Newton further argues the pretrial use of the dolls impinged upon his right to counsel and his right to cross-examination. He analogizes the witness' out of court experience with the dolls to hypnotically enhanced testimony, citing *Peterson v. State,* (1983) Ind. 448 N.E.2d 673. His argument is based on his assumption the witness was able to remember details at trial she was previously unable to remember at her deposition as a result of her practice with the dolls.

Although we find Newton's argument creative, his analogy drawn from *Peterson* is inapplicable in this context for two reasons. First, Newton's assumption the dolls improperly enhanced the victim's testimony is not supported by the evidence. No witness, expert or otherwise, was produced to demonstrate any causal relationship between working with the witness prior to trial and a resultant "suggestive" recollection. To the contrary, the victim testified her testimony resulted from her own perception of the events. She explained her failure to recount the incident at her deposition was a result of her fear. This testimony is corroborated by her narration of a substantially similar version of the facts to her grandmother four days after the incident. The evidence does not bear out the existence of any recount of the events which was the product of an "aided" memory.

Second, there are several distinctive features of hypnotically adduced testimony,

---

**3.** For example, Newton argues for the first time in his appellant's brief, the victim's testimony corroborated by demonstrations with the dolls, produced an inadequate record for purposes of review. Although waived, we observe the record negates the viability of any such issue. It reflects counsel for the State carefully recited in the record the witness' conduct with the dolls. For example:

> "Q. Will you use the doll and show the Judge what it is you did?
>
> A. (And thereupon, the witness demonstrated with the dolls)
>
> Q. Okay, ... are you using the doll, State's Exhibit Number Two (2), are you putting the girl doll's mouth on the boy doll's penis, is that what you're doing?
>
> A. Yes."

Record at 243–244.

absent in pretrial witness preparation, which render Newton's hypnosis analogy inappropriate..

The primary objection to recollection derived from a hypnotic state is just that—it is obtained while the witness is in a hypnotic trance. Opponents of its use as the basis for court room testimony note two salient conditions that exist when a person is in a hypnotic state—*hypersuggestibility* and *hypercompliance*. "[T]he hypnotized individual is not only more easily influenced but is also more highly motivated to please others, . . ." *Pearson v. State,* (1982) Ind., 441 N.E.2d 468, 471 (quoting Levitt, *The Use of Hypnosis to 'Freshen' the Memory of Witnesses or Victims, Trial,* April 1981, at 56).

Theoretically, suggestive comments made by counsel during pretrial discussions with the witness have the potential of tainting a witness' testimony. However, the taint of fabrication is not akin to a witness' unknowing responsiveness to suggestion made under hypnosis.

Further, hypnotically prompted testimony always presents questions regarding its scientific reliability. Pretrial witness preparation, with or without practice with physical evidence, does not pose like considerations of scientific accuracy.

Finally, the purposes behind hypnotizing a witness and working with a witness prior to trial are different. Hypnosis is used as a method by which a witness' recollection is potentially increased. It has been shown that hypnosis can effect witness recall not otherwise attainable. The purpose of the victim's practice with the dolls in the instant case was to relax the victim and help her verbalize her own recollection of the incident. Changing the victim's memory was not an object of the pretrial exchanges with the victim.

■ Even though we reject Newton's contention the witness' experience with the dolls prior to trial was improper and her recollection of the events was therefore contaminated, the fact the witness did practice is a factor properly considered in determining her credibility. This provides the opponent of such testimony the opportunity to undermine the value of such testimony by an attack on the witness' credibility. Newton fully explored this avenue of attack.

## IV.

Newton contends the trial court erred in permitting the State to use excerpts of his previously suppressed statement for impeachment purposes. The post-arrest statement was made to Detective Wininger when Newton was without counsel, in violation of *Miranda* mandates. *Miranda v. Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

■ It is a well established rule in the federal courts, *Harris v. New York,* (1971) 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1, and in Indiana courts, *Johnson v. State,* (1972) 258 Ind. 683, 284 N.E.2d 517, that statements inadmissible under *Miranda* in the State's case in chief may be used for the purpose of impeaching defendant's trial testimony. The Court in *Harris* stated, "[t]he shield provided by *Miranda* cannot be perverted into a license to use perjury by way of defense, free from the risk of confrontation with prior inconsistent utterances." 401 U.S. at 225–226, 91 S.Ct. at 645–646, 28 L.Ed.2d at 4–5.

■ However, *Harris* and *Johnson* do not eliminate the need to inquire into the voluntariness of the defendant's proffered impeaching statement, because "any criminal trial use against a defendant of his *involuntary* statements is a denial of due process of law. . . ." *Mincey v. Arizona,* (1978) 437 U.S. 385, 398, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290. Thus, statements obtained under coercion or duress are inadmissible for all purposes. E.g., *Mincey; Townsend v. Sain,* (1963) 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770; *Brown v. Mississippi,* (1936) 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682.

■ The burden rested with the State to prove Newton's statement was freely and voluntarily made. *Rowe v. State,* (1983) Ind., 444 N.E.2d 303. The issue of voluntariness centers around a careful eval-

uation of all the circumstances surrounding the giving of the statement to determine that it is the product of the defendant's free and rational choice. *Mincey,* 437 U.S. at 401, 98 S.Ct. at 2418.[4]

■ Therefore, on appeal, the question is whether, looking at the totality of the circumstances, the statement was not induced by any violence, threats, promises or other improper influence. *Rowe.* When reviewing, we apply the same standard as in a review of a sufficiency issue. We do not reweigh the evidence nor resolve questions of credibility. We consider the evidence which supports the decision of the fact finder in case of contested evidence as well as any uncontested evidence. *Rowe.* The trial court's finding will be upheld if there is substantial evidence of probative value to support it.

Newton attacks the trial court's determination his statement was voluntary, contending he was "threatened and placed in fear of what life behind bars would be like for a man of his physical limitations."[5] Appellant's Brief at 37. He refers us to the following testimony he gave at the motion to suppress hearing:

"A. ...[U]h, he started, Detective Wininger says, well, says, uh, I want to know what went on June twenty-first (21st), Father's Day, of 'eighty-one ('81). I said, no—well, as far as I can remember, nothing. I told him nothing had went on. And he and, uh, uh, Detective Rodgers said, all right, well, if you're not going to cooperate with us we're just going to let you, just going to let you, uh, just put you in jail and you won't see daylight for I don't know how long, and started to walk out of the room. And at one point he did come up off his desk, point his finger in my face, he says, you're guilty we know you're guilty, [T.M.] says you're guilty, and if, uh, you don't, uh, play ball with us you're going

to Michigan City and you will not last two (2) weeks up there, a man in your condition, under these charges. See, he said, once they see your packet up there, he says, you won't have a chance."

Record at 160–161.

He further directs us to the following testimony given by Detective Wininger at the same hearing:

"Q. Okay. Did you ever tell Mr. Newton that if he didn't cooperate he was going to end up in Michigan City?

A. I might have mentioned the fact that the charges that were pending on him on the capias were very serious and possi—there was—there was a possibility that he was going to go to jail.

Q. I'm saying, did you ever mention Michigan City.

A. I don't recall if I did or not, honestly.

Q. Did you explain to him what would happen to him if he went to Michigan City?

A. In reference to what?

Q. Reference to his physical condition.

A. I told him that with those charges pending the best place to be would not be at Michigan City."

Record at 180.

■ The trial court did not err in admitting excerpts of Newton's statement for impeachment purposes. Detective Wininger denied making any threats or promises to Newton whatsoever. He further testified that while Newton was emotional and crying, he was alert and coherent.

Wininger's comments to Newton that the charges against Newton were very serious and included the possibility of imprisonment were proper. A defendant undergoing interrogation is quite appropriately ad-

---

4. The trial court suppressed the statement's use in the State's case in chief based upon its finding of an infringement upon Newton's *Miranda* rights. Although suppression was also sought on the grounds of involuntariness, the statement's admission for impeachment pur-

poses reflects the court's finding Newton's statement to Detective Wininger was voluntary.

5. Newton is a disabled polio victim.

vised of the charges, their seriousness and possible penalties. The opinion voiced by Wininger that Michigan City would not be the best place, considering the nature of the charges, is not, either by itself, or even considering Newton's physical condition, evidence which leads only to the conclusion it is sufficiently coercive as to overcome Newton's free will. Therefore, we defer to the fact finder's conclusion Newton's statement was voluntary.

### V.

Newton contends the evidence was insufficient to support his convictions. In reviewing the sufficiency of evidence this court will not reweigh the evidence nor judge the credibility of witnesses. We consider the evidence most favorable to the verdict, together with all reasonable inferences which may be drawn from that evidence. *Harden v. State,* (1982) Ind., 441 N.E.2d 215. If each element of the offense is supported by substantial evidence of probative value from which the trier of fact could have inferred the defendant's guilt beyond a reasonable doubt, then the judgment of the trial court must be affirmed. *Burkes v. State,* (1983) Ind., 445 N.E.2d 983.

Mindful of this appellate standard of review, we examine the evidence most favorable to the State. On the morning of June 21, 1981, Donna Sue Newton left her seven-year-old daughter, T.M., at home with her husband, Michael Newton. T.M. testified Newton called her into his bedroom where

he fondled her genitals and anus and forced her to commit oral sodomy.

The thrust of Newton's argument is his contention T.M. was unable to recall many relevant facts at her deposition.[6] In his challenge Newton invites this court to determine the credibility of the prosecuting witness, a task entrusted to the trier of fact. As authority for the proposition that this court may determine de novo the credibility of a witness, Newton cites *Meadows v. State,* (1968) 252 Ind. 1, 238 N.E.2d 281. The court in *Meadows* reversed a conviction for sodomy which rested solely upon the uncorroborated testimony of the prosecuting witness, evidence the court held not sufficiently substantial and probative.[7]

Newton argues T.M.'s "sudden" recall at trial of the events she previously was unable to remember is marked with similar ingredients of "uncredible dubiosity". *Gaddis v. State,* (1969) 253 Ind. 73, 251 N.E.2d 658. We disagree. At trial T.M. explained her failure to reveal the facts of the incident at the deposition resulted from her fears of testifying. Her trial testimony, however, sufficiently described the acts of sexual conduct committed upon her to establish the elements of the crimes with which appellant was charged. We do not believe T.M.'s failure to narrate the incident at her deposition renders her trial testimony inherently improbable. Rather, T.M.'s disclosures at trial indicate her fears concerning testifying had been dispelled.

Newton also argues there was no evidence corroborative of T.M.'s testimony.

---

**6.** In his brief, Newton additionally argues T.M. gave trial testimony inconsistent with her testimony at her deposition. Our review of the record reveals Newton had moved to publish the deposition, but failed to offer the deposition or any parts thereof into evidence. The publishing of a deposition simply means the breaking of the seal on the deposition and making it available for use. *Augustine v. First Fed. Sav. & Loan Ass'n. of Gary,* (1979) 270 Ind. 238, 384 N.E.2d 1018. Discovery evidence, like any other, must be admitted into evidence in order to be considered. *See Harris v. Primus,* (1983) Ind.App., 450 N.E.2d 80. A trial court can only try issues upon evidence which is properly brought before it and placed in the record. *Board of Zoning App. etc. v. LaDow et al.,*

(1958) 238 Ind. 673, 153 N.E.2d 599. We are bound by the record on appeal and therefore restrict our review to T.M.'s own admission at trial that she failed to relate the details of the incident at her deposition. Newton's allegations of contradictory testimony are outside the record and may not be considered.

**7.** In *Meadows,* the prosecuting witness was a mental patient who alternatively recited that appellant did and did not commit the criminal act. The complainant showed signs of hostility toward the accused. While the act allegedly occurred in January, complainant did not mention the incident until mid-May. All these factors led the court to reverse.

The uncorroborated testimony of the prosecuting witness has been held sufficient to sustain a conviction for child molesting even though the victim is a minor. *Jones v. State,* (1983) Ind., 445 N.E.2d 98; *Smith v. State,* (1982) Ind., 432 N.E.2d 1363. Alone, T.M.'s testimony, aided by her use of the anatomically correct dolls, sufficiently described the criminal act. T.M.'s recollection was corroborated by her grandmother's account of what T.M. had told her four days after the incident.

We conclude there is sufficient evidence in the record to sustain Newton's conviction.

### VI.

Newton maintains the trial court erred in sentencing him to concurrent terms of ten years on Count II (child molesting) and two years on Count III (incest). He argues the sentences constitute vindictive justice, contrary to the Indiana Constitution. (Art. I, § 18)

▮ In Indiana, sentencing is a decision within the trial court's discretion and will be reversed only upon a showing of manifest abuse of discretion. *Hanic v. State,* (1980) Ind.App. 406 N.E.2d 335. Newton received the statutorily prescribed ten years for child molesting, a class B felony, I.C. 35–50–2–5 (Burns Code Ed., Repl.1979), and two years for incest, a class D felony, I.C. 35–50–2–7 (Burns Code Ed., Repl.1979). Where the sentence is within the statute governing the offense charged, it cannot be challenged as being too severe. *Coleman v. State,* (1980) Ind.App., 409 N.E.2d 647. We conclude the trial court did not abuse its discretion in sentencing Newton.

For the reasons stated above, appellant's conviction is affirmed.

Affirmed.

BUCHANAN, C.J., and SULLIVAN, J., concur.