**Kipley MILLER, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 24A01–8602–CR–29.

Court of Appeals of Indiana,
First District.

Aug. 19, 1986.

Rehearing Denied Sept. 19, 1986.

Jack R. Shields, Shields & Jones, Batesville, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Presiding Judge.

Appellant-defendant Kipley Miller (Miller) appeals his conviction after a bench trial for the offense of receiving payment while indebted, a class D felony.

We reverse.

A summary of the facts shows that Miller contracted with Estil Spurlock in 1977 to build the Spurlocks a house. During construction, Miller accepted three installment payments totalling $28,900 from the Spurlocks but did not inform them that he had not yet paid for all the materials used in building their home. Miller subsequently declared bankruptcy, leaving the Spurlocks' house unfinished. Zeigler Building Materials, a supplier to the Spurlock construction, perfected a mechanic's lien on the Spurlocks' property. Miller was subsequently charged and convicted pursuant to IND.CODE 32–8–3–15 on June 10, 1985, and brings this appeal with three issues, the first of which determines this case: whether the evidence on the mens rea element is sufficient to support the conviction.

Miller argues that I.C. 32–8–3–15 requires a specific mens rea element which is

absent from the statute and charging information. He alleges the State failed to offer evidence on this element and points out the statute has been amended to specifically require criminal intent since his conviction. *See* I.C. 32–8–3–15 (as amended by Acts 1978 and 1983).

In 1977, as relevant here, I.C. 32–8–3–15 read:

> Receiving payment while indebted—Failure to give notice of indebtedness—Penalty.—Any person, firm or corporation who, as contractor or subcontractor or otherwise, shall have performed labor, supplied services or furnished material or machinery in the construction, reconstruction, erection, repair or remodeling of any building, structure or any other work of any description whatsoever, and who shall accept payment for the labor, services, material or machinery so furnished and supplied, and who, at the time of receiving such payment, is indebted to another for labor, including the cost of renting or leasing construction and other equipment and tools, whether or not an operator is also provided by the lessor, services, material or machinery used or employed in the construction, reconstruction, erection, repair or remodeling of such building or structure, and who at the time of receiving such payment shall fail or refuse to notify, in writing, the person, firm or corporation from whom such payment was received, of the existence of such outstanding indebtedness, and if the person, firm or corporation from whom such payment was received, shall suffer loss thereby, such person, firm or corporation, or the responsible officer thereof so accepting such payment shall be guilty of a felony and, upon conviction therefor, shall be fined in any sum not exceeding one thousand dollars [$1,000], or imprisoned in the Indiana state prison for not less than one [1] year nor more than five [5] years, or both such fine and imprisonment, in the discretion of the court.

■ It is fundamental in criminal law that an offense must contain both mens rea (guilty mind) and actus reus (voluntary conduct) elements. *Rogers v. State,* (1978) 267 Ind. 654, 373 N.E.2d 125; *Sills v. State,* (1984) Ind., 463 N.E.2d 228, 241 (*See* Givan, C.J., concurring in result). Further, criminal offenses are traditionally classified as either *malum in se,* i.e. inherently evil as adjudged by society, or *malum prohibitum,* i.e. wrong only because prohibited by legislation. *Gregory v. State,* (1973) 259 Ind. 652, 291 N.E.2d 67, 68.

In Indiana, proof of a mens rea element is rarely excused, and the narrow exceptions tend to involve certain *malum prohibitum* regulatory offenses. *E.g.: Groff v. State,* (1908) 171 Ind. 547, 85 N.E. 769 (adulterated food offense); *Sewell v. State,* (1983) Ind.App., 452 N.E.2d 1018 (traffic offense). However, like *malum in se* crimes, *malum prohibitum* offenses usually require proof of a mens rea. 8 I.L.E. *Criminal Law* § 10 (1971). *See e.g.: Noble v. State,* (1967) 248 Ind. 101, 223 N.E.2d 755; *Johnson v. State,* (1968) 251 Ind. 17, 238 N.E.2d 651, 653. *But see: Gregory,* 291 N.E.2d at 68.

■ Many Indiana cases have construed mens rea elements into criminal statutes which omit language of culpability. *See e.g.: Noble, supra* (false attestation as notary); *Newton v. State,* (1983) Ind.App., 456 N.E.2d 736 (child molesting); *Gregory, supra* (robbery); *Satterfield v. State,* (1984) Ind.App., 468 N.E.2d 571 (possession of bombs) quoting *Malich v. State,* (1929) 201 Ind. 587, 169 N.E. 531 (prohibition). We choose to follow these cases and construe knowledge and intent as statutory elements of the felony of which Miller was convicted. In support, we also note that when a criminal statute omits words of culpability, the legislative intent determines whether a mens rea element should be construed. *Gregory, supra;* LaFave *Criminal Law* § 90, p. 219. Here, I.C. 32–8–3–15 is a criminal statute which derived from the common law offense of fraud. 14 I.L.E. *Fraud* § 3 (1959). Our courts favor the requirement of a mens rea in offenses from common law derivations. *See: Gregory,* 291 N.E.2d at 68; *Newton,*

456 N.E.2d at 739–740. *See also:* 22 C.J.S. *Criminal Law* § 30, p. 104.

It is well established that we will not reweigh evidence and will affirm a conviction when probative evidence supports a reasonable inference of guilt beyond a reasonable doubt on each element of an offense. *Newton,* 346 N.E.2d at 742.

■ However, we have read the record and agree with Miller that no evidence of criminal intent was adduced. This element is often inferred from a defendant's conduct and the surrounding circumstances. *E.g.: Shields v. State,* (1983) Ind.App., 456 N.E.2d 1033, 1039. However, we are unwilling to affirm a felony conviction on an offense which has its roots in fraud, 14 I.L.E. *Fraud* § 3, when no intent to defraud has been proven beyond a reasonable doubt. In fact, no evidence supports this element in the present case and we are asked to infer it from Miller's conduct and the circumstances. This case is different from *Gregory, supra,* or *Newton, supra,* where criminal intent was inferred from the defendants' acts of robbery and child molesting. It is reasonable to infer that one who brandishes a gun while taking another's money, *Gregory,* or molests young children, *Newton,* intends the criminal consequences of his acts. Here, however, there is nothing inferentially culpable about a contractor accepting payments for work he is providing. In fact, such payments could be used to pay the debts to his materialman and laborers.[1] We will not infer the requisite criminal intent from these circumstances.

■ Likewise, the information charging Miller was defective since it failed to allege as an essential element criminal intent. *See:* IND.CODE 35–3.1–1–2(a)(4) [now I.C. 35–34–1–2(a)(4) ]; *Head v. State,* (1982) Ind., 443 N.E.2d 44, 52. Whether the elements are expressed in the statute

or enter into the offense by construction, they must be included so that the accused may know what he must meet. *McCormick v. State,* (1954) 233 Ind. 281, 119 N.E.2d 5, 7; Ind. Const.Art. 1, § 13.

In short, unlike most offenses where the prohibited conduct might permit a reasonable inference of intent, the felony offense on which Miller was convicted, derived from fraud and addressed by only one appellate decision since the statute's inception in 1909 wherein the defendant's conviction was reversed,[2] has not been supported with evidence beyond a reasonable doubt on the element of intent.

Conviction reversed.

NEAL, J., concurs.

RATLIFF, J., dissents with separate opinion.

RATLIFF, Judge, dissenting.

I respectfully dissent.

The majority concludes that there was insufficient evidence from which the trier-of-fact could have found that Miller acted with the intent to defraud. "Because specific intent is a mental state not generally susceptible of direct proof, it may be inferred from all the surrounding circumstances." *Hammond v. State* (1985), Ind. App., 479 N.E.2d 629, 632. Miller, as general contractor for the Spurlocks, purchased building materials from Ziegler Building Materials, Inc. On September 20, 1977, and October 3, 1977, Miller owed Ziegler in excess of $5,000 and $12,000 respectively. On these same dates, Miller accepted payments from the Spurlocks of approximately $12,000 and $14,000. However, Miller did not inform the Spurlocks of his indebtedness to Ziegler on either occasion even though he was certainly aware of it. This was clearly sufficient evidence

---

**1.** We note that under Illinois' equivalent statute, ILL.ANN.STAT. Ch. 82, § 5 (Smith-Hurd Supp. 1986), a civil statute, the *owner* is under a duty to require notice of indebtedness from the contractor and waives all claims when he fails to do so. *See: Swansea Concrete Products, Inc. v.*

*Distler,* (1984) 126 Ill.App.3d 927, 81 Ill.Dec. 688, 467 N.E.2d 388, 393.

**2.** *Williams v. State,* (1929) 89 Ind.App. 46, 165 N.E.2d 762.

from which the trial court could infer intent to defraud.

The majority has also concluded that the information filed in this case was defective because it failed to include the essential element of intent to defraud. Excluding formal parts, the information stated:

"ESTILL SPURLOCK being duly sworn upon oath says that KIPLEY MILLER on or about June through October, 1977 at said County of Franklin and State of Indiana, did then and there unlawfully perform labor, as a contractor, in the construction of a home for Estill Spurlock, and accepted payments from Estill Spurlock for such labor and at the time of the acceptance of such payment, said Kipley Miller *knew* he was indebted to another for material used in the construction of such home, and further, said Kipley Miller at the time of receiving said payments failed to notify Estill Spurlock in writing of the existence of said indebtedness. Estill Spurlock suffered loss thereby. All of which is contrary to the form of the Statute in such cases made and provided and against the peace and dignity of the State of Indiana." (Emphasis added.)

Record at 5. Although I agree with the majority that an information or indictment must allege each essential element of the crime charged, including intent, *see McCormick v. State* (1954), 233 Ind. 281, 285–86, 119 N.E.2d 5, 7, that requirement was satisfied here. As we held in *Brown v. State* (1980), Ind.App., 403 N.E.2d 901, *trans. denied*, it would be preferable to use the words "intent to defraud," but the words actually employed are of the same import. *Brown*, at 907. The purpose of the charging instrument is to advise the defendant of the crime charged so that he can prepare an adequate defense. *McGee v. State* (1986), 495 N.E.2d 537, 538; *Farmer v. State* (1985), Ind.App., 481 N.E.2d 154, 156; *Brown*, at 908. Nothing in the information challenged here impaired Miller's ability to prepare an adequate defense. Having reached this conclusion, it is necessary to address the other arguments asserted by Miller in his appellate brief.

Miller essentially contends that a state court may not require a defendant, as a condition of probation, to make restitution to his victim for losses occasioned by the commission of the offense when the debt occasioned by the same offense has been discharged in bankruptcy proceedings. However, the majority of courts confronted with this argument have rejected it. *See United States v. Roberts* (9th Cir.1985), 783 F.2d 767, 771; *United States v. Alexander* (7th Cir.1984), 743 F.2d 472, 480; *McDonald v. Burrows* (5th Cir.1984), 731 F.2d 294, 299; *Barnette v. Evans* (11th Cir.1982), 673 F.2d 1250, 1252; *United States v. Carson* (5th Cir.1982), 669 F.2d 216, 217–18; *In re Thompson* (S.D.Tex. 1976), 416 F.Supp. 991, 996; *In re Wilson* (E.D.Tenn.1983), 30 B.R. 91, 97; *People v. Milne* (1984), Colo., 690 P.2d 829, 837–38; *State v. Angle* (1984), Iowa, 353 N.W.2d 421, 424; *People v. Topping Brothers, Inc.* (1974), 79 Misc.2d 260, 261–62, 359 N.Y. S.2d 985, 987. *See contra In re Penny* (W.D.N.C.1976), 414 F.Supp. 1113, 1115; *In re Strassmann* (E.D.Pa.1982), 18 B.R. 346, 347; *In re Whitaker* (M.D.Tenn.1982), 16 B.R. 917, 922–23; *In re Lake* (S.D.Ohio 1981), 11 B.R. 202, 205. I would adopt the view taken by the majority of these courts.

The fact that a criminal defendant's personal liability has been discharged in bankruptcy does not preclude an order of restitution as a component of a criminal sentence. Probation is a criminal sanction aimed at providing an offender with the opportunity to rehabilitate himself without being confined to a correctional institution. *Carson*, at 217; *Alexander*, at 480; *Milne*, at 837. Restitution, as a condition of probation, can be an instrumental part of the offender's rehabilitation.

"Restitution can aid an offender's rehabilitation by strengthening the individual's sense of responsibility. The probationer may learn to consider more carefully the consequences of his or her actions. One who successfully makes restitution should have a positive sense of having earned a fresh start and will have tangible evidence of his or her capacity

to alter old behavior patterns and lead a law-abiding life. Conditioning probation on making restitution also protects the community's interest in having victims of crime made whole."

*Carson*, at 218, *quoting Huggett v. State* (1978), 83 Wis.2d 790, 798, 266 N.W.2d 403, 407. *See also Milne*, at 837; *People v. Mosesson* (1974), 78 Misc.2d 217, 218, 356 N.Y.S.2d 483, 484. The primary goal of restitution is, therefore, to vindicate the rights of society, not to compensate the offender's victim, although that is certainly a result of the restitution. *Carson*, at 217; *Milne*, at 837. Thus, an order of restitution is as much a part of a criminal sentence as a fine or other penalty. *Milne*, at 837. The purpose of the Bankruptcy Act, on the other hand, is to give overextended individuals a fresh start financially. *Perez v. Campbell* (1971), 402 U.S. 637, 648, 91 S.Ct. 1704, 1710–11, 29 L.Ed.2d 233, 241. It is not meant to be used as a refuge for those seeking to avoid responsibility for their criminal acts. *Milne*, at 837; *Topping Brothers*, 79 Misc.2d at 261–62, 359 N.Y.S.2d at 987; *Mosesson*, 78 Misc.2d at 219, 356 N.Y.S.2d at 485. Therefore, I would agree with those courts which have found that, in the circumstances of this particular case, a restitution order does not impinge on any of the defendant's federally protected rights.

Finally, Miller correctly points out, and the state concedes, that the trial court failed to determine his ability to pay the amount of restitution ordered. Indiana Code section 35–38—2–2(a)(5) provides:

"Conditions of probation—Intermittent term of imprisonment—Court supervision.—(a) As conditions of probation, the court may require the person to do any combination of the following:

. . . . .

"(5) Make restitution or reparation to the victim of his crime for the damage or injury that was sustained. When restitution or reparation is a condition of probation, the court shall fix the amount, which may not exceed an amount the person can or will be able to pay, and shall fix the manner of performance."

This provision clearly requires the trial court to determine the defendant's ability to pay the amount of restitution ordered. *Smith v. State* (1984), Ind.App., 471 N.E.2d 1245, 1248–49, *trans. denied; Sales v. State* (1984), Ind.App., 464 N.E.2d 1336, 1340; *Maxwell v. State* (1983), Ind.App., 455 N.E.2d 1171, 1175–76, *trans. denied.* Here, however, the trial court made no inquiry into Miller's ability to pay restitution of $17,000. Nor did it set a manner of performance other than to require Miller to make arrangements within 120 days to pay the amount. This is of particular concern in a case where the defendant has recently been adjudged bankrupt. *See Sales*, at 1340. Thus, I would remand for a hearing and the entry of findings in accordance with *Sales v. State.* In light of that conclusion, it is unnecessary, at this time, to address Miller's argument that an order of restitution in the amount of $17,000 constitutes an unconstitutionally excessive fine.

For the foregoing reasons, I respectfully dissent.