DEARBORN CONSTRUCTION COMPANY, Plaintiff-Appellant, *v.*
DOUGLAS GOODMAN *et al.*, Defendants-Appellees.
First District (1st Division)   No. 81—2882

Opinion filed December 30, 1982.—Rehearing denied February 7, 1983.

Cyril J. Watson, of Mitchell, Russell and Kelly, and William J. Harte, both of Chicago, for appellant.

Edward S. Lipsky and Dennis M. Sbertoli, both of Zipperman, Levin & Associates, of Chicago, for appellees.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Dearborn Construction Co., an Illinois corporation, brought this action against defendants, Douglas Goodman and Bert C. Young & Sons Corp., an Illinois corporation, alleging the existence of an oral contract to submit a joint bid to the Public Building Commission of Chicago, a municipal corporation, and seeking the imposition of a constructive trust and an accounting for a share of the profits realized by defendant, Bert C. Young & Sons Corp., as successful bidder. Following the close of plaintiff's case in a bench trial, the trial court granted defendants' motion for a judgment. On appeal, plaintiff raises the following issues: (1) whether the alleged oral agreement between plaintiff and defendant, Bert C. Young & Sons Corp., to submit a joint bid to the Public Building Commission violates sections 19 and 20 of the Public Building Commission Act (Ill. Rev. Stat. 1977, ch. 85, pars. 1049, 1050), and, therefore, is unenforceable as an illegal contract; (2) whether defendant Douglas Goodman, as director and president of plaintiff, breached his fiduciary duty to plaintiff; and (3) whether defendant, Bert C. Young & Sons Corp., wrongfully induced defendant Goodman to breach his fiduciary duty to plaintiff.

The record discloses that defendant, Bert C. Young & Sons Corp. (Young), was the successful bidder in public bidding for the Richard J. Daley Center Alterations Contract No. 272. A bid in Young's name was submitted to the Public Building Commission of Chicago on April 13, 1978. Young was awarded the contract by the commission. According to plaintiff's complaint, the officers of plaintiff, including defendant Douglas Goodman as president of plaintiff, and the officers of Young agreed in March 1978 to submit a joint bid on the alterations contract to the commission. The bid was to be submitted in Young's name alone because plaintiff had previously encountered difficulties in obtaining performance bonds for large projects (*i.e.*, in excess of $500,000). Plaintiff alleged that the oral agreement required plaintiff to be responsible for, and profit from, the general trades portion of the alterations contract (excavating, masonry, carpentry, etc.), while Young was to be responsible for, and profit from, the mechanical trades portion of the alterations contract (plumbing, heating, air conditioning, etc.). On April 19, 1978, Goodman resigned as director and president of plaintiff. In early May 1978, Goodman became an employee of Young. Plaintiff claimed that Young breached its oral agreement by refusing to allow plaintiff to participate in the alterations contract work. Plaintiff also alleged that after Goodman resigned as its president, Goodman provided Young with information obtained as plaintiff's president. Plaintiff alleged that Young wrongfully induced Goodman to breach his fiduciary duty to plaintiff.

At trial, Peter Mrakovich, who was a director and secretary of plaintiff in March 1978, testified that he and Goodman for plaintiff and James Young for Young made an agreement to submit a joint bid in Young's name for the Daley Center contract. He stated that Dearborn and Young had previously submitted joint bids on the other projects, although no contracts were awarded on any prior joint bids. According to the witness, Young was to prepare the bid and complete the work for the mechanical trades portion of the contract and Dearborn was to prepare the bid and complete the work for the general trades portion of the contract. On April 13, 1978, Goodman telephoned Young to obtain the final figures for the work and then Goodman submitted the bid to the commission, which bid was made in Young's name. After Goodman's resignation from Dearborn, the witness had two meetings with Young and he provided James Young with Dearborn's file for the alterations contract because Young needed the file to show to a bonding company. Mrakovich stated that on May 8, he made a demand to Young that Young honor its oral agreement and permit Dearborn to participate in the alterations contract. He also

stated that the general trades portion of the contract was 54% of the total work involved in the project. Mrakovich indicated that Dearborn submitted a deposit to the commission and took out a set of bid documents for the Daley Center project.

James Wilcher, an officer and director of plaintiff, testified that in March and April of 1978, he and Goodman discussed a joint venture agreement which involved Young and concerned the Daley Center project. Wilcher stated that Goodman left a message on Dearborn's telephone answering machine, which message was "we got the job" which was in reference to the alterations contract. Wilcher also stated that Dearborn's role in the alterations contract was "like a subcontractor, not a subcontractor. [Young] would do the mechanical portion, and [Dearborn] would do the general trades portion."

Douglas Goodman stated that prior to his resignation from Dearborn in April 1978, he was a director and president of Dearborn. Dearborn had taken out bid documents for the Daley Center project and had solicited bids from various subcontractors in connection with the project. On April 13, the day on which the bids for the project were submitted, Goodman received a signed incomplete bid form from Young. He then went to the commission with the bid form and telephoned Young who provided him with the final bid figures with which Goodman completed the bid form. Goodman submitted the bid and subsequently learned that Young was the successful bidder. On April 19, Goodman resigned from Dearborn. On May 3, Goodman received his first paycheck from Young.

Following the close of plaintiff's case, the court permitted Dearborn to amend its prayer for damages to reflect 53.4% of the profit from the alterations contract. Defendants presented a joint motion for a judgment at the close of plaintiff's case. The court concluded that the "alleged oral contract" between Dearborn and Young was unenforceable because it violated section 20 of the Public Building Commission Act (Ill. Rev. Stat. 1977, ch. 85, par. 1050). The court stated that the purpose of section 20 was to promote full disclosure of the bidders to the Public Building Commission and that section 20 precluded a joint bid where one of the bidders is not disclosed. The court also relied upon an "Affidavit of Noncollusion" which was executed by James Young and submitted with the bid. The court ruled that no evidence was adduced that Young induced Goodman to breach a fiduciary duty owed to plaintiff or that Goodman breached any fiduciary duty owed to plaintiff. The court also found that the evidence and the exhibits "wholly fail" to establish the causes of action alleged in the complaint. Accordingly, the trial court granted defendants' motion.

Plaintiff Dearborn first contends that section 20 of the Public Building Commission Act does not preclude a joint bid. Plaintiff maintains that Dearborn was not a bidder for the alterations contract and, therefore, there could not be any collusion among bidders. Plaintiff also argues that the evidence established the existence of an oral contract to jointly submit a bid to the Public Building Commission. As to the remaining two issues raised by plaintiff on appeal, plaintiff contends that the evidence was sufficient to show that Young induced Goodman to breach a fiduciary duty owed to plaintiff and that Goodman breached a fiduciary duty owed to plaintiff.

Defendants Young and Goodman argue that the trial court never concluded that Young and Dearborn entered into an oral agreement concerning the Daley Center project. Defendants refer to the court's order in which it stated that "the alleged oral contract between Plaintiff and Defendants is unenforceable as violative of the Local Government Act. Chapter 85 §1050 of the Illinois Revised Statutes." Defendant also refers to a finding made by the court at the time that it ruled on defendants' motion for a judgment at the close of plaintiff's case. The court stated:

"[T]he Court in hearing the testimony of Mr. Wilcher made note of the fact that although he was not present at the alleged negotiations, he thought they were going to get a contract which leads this court to believe that no final conclusion, had they complied with the law, that an oral agreement had been entered into at all. We talked about the job, that is, when Mr. Young allegedly came after the bid, whether he was going to let us do the job. So, apparently Dearborn didn't know whether they were getting the job or not."

Defendants contend that section 20 of the Public Building Commission Act provides that bidding on public projects is to be through "open competitive bidding" and that the agreement which Dearborn alleges to have existed is a collusive bid in violation of section 20.

In *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 407 N.E.2d 43, the supreme court held that in ruling on a motion for a judgment at the close of plaintiff's case in a nonjury trial, the trial court should employ a two-step analysis. Initially, the trial court must determine whether plaintiff has established a *prima facie* case. If the court concludes that the plaintiff has made out a *prima facie* case, the court, in its role as trier of fact, then weighs the evidence and evaluates the credibility of the witnesses. This weighing process may negate some of plaintiff's evidence. If after weighing the evidence and assessing the credibility of witnesses, the court determines the plaintiff's *prima*

*facie* case remains, the court should deny the motion. (*Kokinis v. Kotrich; Happel v. Mecklenburger* (1981), 101 Ill. App. 3d 107, 427 N.E.2d 974.) On appeal, the decision of the trial court will not be reversed unless it is contrary to the manifest weight of the evidence. *Kokinis v. Kotrich; Happel v. Mecklenburger.*

In the instant case, the record discloses that the trial court was not persuaded by the evidence that an oral contract to submit a joint bid existed. In its order granting defendants' motion for a judgment, the court stated that "the evidence and exhibits offered by the Plaintiff wholly fail to establish the cause of action alleged in the complaint, Counts I through V inclusive." It appears that the court concluded that plaintiff failed to offer sufficient evidence to establish the existence of an oral contract to submit a joint bid and, therefore, failed to establish its *prima facie* case. Our review of the record supports the decision of the trial court in that plaintiff failed to present sufficient evidence to establish the existence of an oral contract to submit a joint bid. Because we have concluded that the record fails to establish the alleged oral contract, we need not consider whether such an oral contract is void, as a matter of law, because it violates either section 19 or section 20 of the Public Building Commission Act.

Plaintiff raises two other issues on appeal, both of which concern the sufficiency of the evidence offered in this cause. The trial court concluded, and we agree, that the evidence failed to establish that defendant Young induced Goodman to breach a fiduciary duty owed to plaintiff and that defendant Goodman breached any fiduciary duty owed to plaintiff. Under the standard for ruling on a motion for a judgment at the close of plaintiff's case, as set forth in *Kokinis v. Kotrich*, we cannot say that the trial court erred in granting defendants' motion for a judgment and entering judgment for defendants.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

GOLDBERG and McGLOON, JJ., concur.