BRL CARPENTERS, LTD., *et al.*, Plaintiffs-Appellants, *v.* AMERICAN NATIONAL BANK & TRUST CO. *et al.*, Defendants-Appellees.

First District (5th Division)   No. 83—894

Opinion filed June 29, 1984.

Alan E. Richards and Mary Hylton, both of Richards & Ralph, Chartered, of Libertyville, for appellants.

Ronald R. Peterson and Larry M. Wolfson, both of Jenner & Block, Chicago, for appellees American National Bank & Trust Co. and The Loop Hospital Partnership.

Cooper & Cooper, Ltd., of Chicago, for appellee Judith A. Kelsey.

JUSTICE SULLIVAN delivered the opinion of the court:

In this appeal, plaintiff contends that the trial court erred in finding for defendants at the close of plaintiff's case as to a count in plaintiff's complaint seeking foreclosure of a mechanic's lien claim on the basis that it had not established a *prima facie* case on that count.

Plaintiff, BRL Carpenters, Ltd. (BRL), filed a two-count complaint against American National Bank & Trust Co., as trustee of the Chicago Eye, Ear, Nose and Throat Hospital (the Hospital), Loop Hospital partnership (Loop), as beneficial owner thereof, and the individual Loop partners[1] seeking (a) foreclosure of its mechanic's lien for construction management services and carpentry labor totalling $116,354.38, and (b) damages for breach of contract in the same amount.[2]

It appears from the extensive record that Loop was formed to purchase and renovate the Hospital and to thereafter reopen and op-

---

[1] One of the partners, Dr. Judith A. Kelsey, has adopted plaintiff's brief and argument as her response in this appeal.

[2] The breach of contract count remains pending in the trial court.

erate it as the Chicago Specialty Hospital. Bruce Larson (Larson), president of BRL, and David Walsh (Walsh), managing general partner of Loop, executed a standard American Institute of Architects (AIA) written contract (the Loop contract), which was prepared by Larson and contained the following pertinent articles:

> "1.1 The Contractor shall perform all the Work required by the Contract Documents for [:] Plans and specifications as submitted to owner.
>
> * * *
>
> 2.1 *** The Contractor agrees to furnish efficient business administration and superintendence ***.
>
> * * *
>
> 5.1 In consideration of the performance of the Contract, the Owner agrees to pay the Contractor ***:

| | |
|---|---|
| $50,000.00 at time of closing for consulting and preconstruction work | $50,000.00 |
| $15,000.00 each month for 7 following months | 105,000.00 |
| | $155,000.00 |

> * * *
>
> 6.1 The term Cost of the Work shall include ***:
> 6.1.1 Wages paid for labor in the direct employ of the Contractor in the performance of the Work ***.
>
> * * *
>
> 14.1. The Contractor shall supervise and direct the Work ***."

At trial, Larson was the only witness called. He testified that under this contract, BRL was to provide construction management services for Loop in connection with the renovation of the Hospital. The "consulting and preconstruction work" referred to in article 5 consisted essentially of conferring with the partners and architects to develop the overall plans for the project prior to July 7, 1980, the date Loop's purchase of the Hospital was finalized. The post-closing services for which the lien is sought[3] included continual coordination and planning of the project, preparation of budgets and estimates, bidding out and entering into subcontracts for the work, overseeing the work progress of the subcontractors, and preparation of statements submitted to the mortgagor for payment as portions of the work were completed.

Describing the performance of these services in chronological se-

---

[3]In this appeal, plaintiff has excluded the preclosing services without altering the total amount of the lien sought. It maintains that the value of the post-closing services exceeds its lien claim.

quence, Larson testified that in the first month after closing he met with Walsh either at Walsh's office or at the Hospital on a daily basis and frequently consulted with the partners, architects, and Hospital administrative personnel to determine their requirements for utilization of the space within the Hospital, drew up estimates and budgets for the improvements, and began bidding out the subcontracts. In the second month, he continued meeting with the principals to plan and budget the renovation, entered into the subcontracts, and supervised the workmen on the job. During the third month, he was still meeting with Walsh almost daily to discuss and make changes in the plans and was also monitoring the construction taking place. Throughout the following months, as the amount of actual remodeling work increased, he became more involved with monitoring the construction, but he also continued to plan the project and to meet with the partners to advise them of its progress and to discuss the plan changes. During this period, he repeatedly requested payment from Walsh of the $50,000 fee for preconstruction consulting work and the $15,000 monthly payments for post-closing services, but was paid a total of only $10,000.

In addition to the planning and construction-monitoring services rendered after July 1980, BRL also supplied carpentry labor for the renovation project. A weekly time book containing the workmen's time sheets, which were compiled by the superintendent on the job, and check-request forms for construction payroll, which were approved by a Loop executive, were admitted into evidence. Larson testified that under the contract, BRL was to be reimbursed on a weekly basis for carpenters' wages it paid in accordance with the time sheets but that Loop failed to reimburse $34,485.16 in wages paid by BRL for carpentry labor performed between March 6, 1981, and April 17, 1981, when BRL left the job. Upon conclusion of Larson's testimony, BRL rested its case and defendants moved for judgment in their favor. The trial court granted defendants' motion for a finding on the mechanic's lien count and entered judgment in favor of all defendants as to that count, but it denied the motion as to the breach of contract count. Plaintiff's subsequent motion for reconsideration as to the judgment on the mechanics' lien count was denied, and this appeal followed.

OPINION

Plaintiff contends that the trial court erred in its finding on the mechanics' lien count, arguing that Larson's uncontroverted testimony considered with the AIA contract provisions as well as the time

sheets and check requests were sufficient to make out a *prima facie* case on its lien claim.

Initially, we note that the standard to be applied by the trial court in ruling on the motion to find for defendants at the close of plaintiff's case in a bench trial, pursuant to section 2—1110 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1110) was set out in *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 407 N.E.2d 43. There, our supreme court held that the trial court must first determine, as a legal matter, whether the plaintiff has established a *prima facie* case by presenting at least some evidence on every element essential to the action. If plaintiff has not, defendant is entitled to judgment as a matter of law. Only if the trial court finds that plaintiff has made out such a *prima facie* case must it, as the finder of fact, then weigh all of the evidence including any favorable to defendant—which may result in the negation of some of the evidence necessary to plaintiff's case—to determine if a *prima facie* case still exists. *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 407 N.E.2d 43; *Dearborn Construction Co. v. Goodman* (1982), 112 Ill. App. 3d 170, 445 N.E.2d 340; *Wheeling Trust & Savings Bank v. City of Highland Park* (1981), 97 Ill. App. 3d 519, 423 N.E.2d 245; *Chicago Title & Trust Co. v. Ceco Corp.* (1980), 92 Ill. App. 3d 58, 415 N.E.2d 668.

Here, in granting defendants' motion for judgment, the court found that the Loop contract "fails to sufficiently describe the work contemplated by the parties to be done by BRL [plaintiff] as and for contractor's services, and the testimony of Larson failed to sufficiently establish what work was in fact done by BRL or Larson under Article 5 [of the Loop contract]." The court also found that "[t]he testimony [of Larson] described both lienable and non-lienable services without establishing an apportionment of costs of each and, accordingly, plaintiff has failed to establish a *prima facie* case for a mechanic's lien under Article 5." We think it is clear therefrom that the court made this finding as a matter of law and thus never reached the second step of the *Kokinis* analysis which would have required it to evaluate Larson's credibility, weigh all of the evidence, and then determine whether plaintiff's *prima facie* case for a lien right still existed. Indeed, inasmuch as defendants did not attempt to negate any of plaintiff's evidence or to discredit Larson's testimony through cross-examination, we fail to see what evidence favorable to them the trial court could have considered to accomplish the second *Kokinis* step. Consequently, in reviewing the propriety of the judgment for defendants, we will determine only whether, as a matter of law, plaintiff presented a *prima facie* case for its mechanic's lien claim. See *Chi-*

*cago Title & Trust Co. v. Ceco Corp.* (1980), 92 Ill. App. 3d 58, 415 N.E.2d 668.

The Mechanics' Liens Act (the Act) provides in pertinent part that "[a]ny person who shall by contract *** with the owner of a lot or tract of land *** furnish or perform labor or services as superintendent *** in the building, alteration, repairing or ornamenting of the same [the lot or tract of land] *** has a lien upon the whole of such lot or tract of land *** for the amount due him for such *** services or labor ***." (Ill. Rev. Stat. 1981, ch. 82, par. 1.) Thus, under the *Kokinis* reasoning, to make out a *prima facie* case plaintiff here was required to, and we believe did, present some evidence that it contracted with defendants for and did perform services as superintendent in connection with the renovation of the Hospital. However, defendant correctly points out that in those cases involving contracts for performance of both lienable and nonlienable services, the lienable work must be separable and the total amount due under the contract must be apportionable between the lienable and nonlienable items; otherwise, the entire lien claim will fail. *Adler v. World's Pastime Exposition Co.* (1888), 126 Ill. 373, 18 N.E. 809; *Verplank Concrete & Supply, Inc. v. Marsh* (1976), 40 Ill. App. 3d 742, 353 N.E.2d 27.

In the instant case, as noted above, the trial court specifically noted that neither the written contract nor Larson's testimony adequately described the work contemplated by the parties or performed by BRL, and that Larson's testimony described both lienable and nonlienable services without establishing an apportionment of costs as to each.

A reading of the AIA document prepared and submitted by plaintiff reveals that it is a standardized form contract lacking any specificity concerning the nature of the post-closing services for which BRL was to be paid $15,000 each month as provided in article 5. We note also that under article 1, captioned "The Work," in lieu of a description thereof, plaintiff inserted "[p]lans and specifications as submitted to owner"; however, no such documents were introduced at trial or otherwise included in the record. Absent a description of the work contracted for, it cannot be determined whether plaintiff's duties under article 2—"to furnish efficient business administration and superintendence" and under article 14—"to supervise and direct the Work" consisted of lienable services under the Act. Thus, we conclude that the trial court was correct in its finding that the written contract, standing alone, does not constitute *prima facie* evidence that plaintiff is entitled to a lien against the Hospital.

Although plaintiff conceded in arguments before us that the AIA

contract "did not explicitly define" what work was to be performed thereunder, it nevertheless maintains that Larson's testimony concerning the post-closing services rendered in accordance therewith established the existence of a contract for "construction superintendence" which qualifies as lienable labor under that provision of the Act entitling anyone who contracts to "furnish or perform services as a superintendent *** in the building, altering, repairing or ornamenting" of the subject property to a lien thereon. Ill. Rev. Stat. 1981, ch. 82, par. 1.

■ Applying the common usage of the word "superintendent" as "[o]ne who *** has the oversight and charge of something with the power of direction" (Black's Law Dictionary 1288 (5th ed. 1979)), it would appear that the construction supervision and monitoring services Larson testified he performed qualify as lienable labor under the Act. However, Larson also testified that in the first month after closing he met with Walsh nearly every day to develop the renovation plans, and that throughout the remaining eight months BRL was on the job, in addition to monitoring the construction, he performed other tasks and continued to consult with Walsh, the architects, and the partners to plan and budget the renovation project. Plaintiff argues that these services were "incidental, ancillary and necessary" to the performance of construction superintendence; however, while it may be inherent in the function of a construction superintendent to meet with the owners of the property for the purpose of receiving instructions concerning construction tasks or reporting on the progress of the work, we agree with the trial court that the consulting, planning, and budgeting described by Larson do not come within the customary responsibilities of a construction superintendent as that term is defined above, and finding nothing in the record or other provision in the Act which would indicate such services to be lienable, we believe—as did the trial court—that they were not.

Having determined that there was a contract pursuant to which both lienable and nonlienable services were performed, the remaining question is whether the total amount due thereunder can be apportioned among those items.

In this regard, we have reviewed Larson's testimony enumerating the various tasks he allegedly performed over the course of the nine months following closing and find no allocation therein of the time he spent at each or the costs he ascribed thereto. Consequently, the amount claimed by plaintiff to be due cannot be apportioned between lienable and nonlienable services, and the entire lien claim for superintendent services must fail. *Adler v. World's Pastime Exposition Co.*

(1888), 126 Ill. 373, 18 N.E. 809; *Verplank Concrete & Supply, Inc. v. Marsh* (1976), 40 Ill. App. 3d 742, 353 N.E.2d 27.

■■ The trial court also ruled that plaintiff had failed to present a *prima facie* case as to its lien claim for the costs of carpentry labor it furnished for the renovation project, on the ground that neither the exhibits proffered by plaintiff nor Larson's testimony contained a description of what carpentry labor was performed or what improvements to the Hospital resulted therefrom. Defendants assert that the trial court's ruling was correct because, unless it is shown that the labor was performed in the actual construction of the building, it is not lienable. (See, *e.g., Hoier v. Kaplan* (1924), 313 Ill. 448, 145 N.E. 243.) The record reveals, however, that when examined as to the type of labor furnished by BRL for the renovation of the Hospital, Larson responded, "carpentry labor." He also identified the carpenter's time sheets which were certified by the foreman and check-request forms which had been approved by an executive of the Hospital authorizing payment for the "construction payroll." Noting once again that, in determining the propriety of the judgment for defendants in this case, we are not to consider the weight of the evidence but must confine our review to the singular question of whether plaintiff presented at least some evidence of a contract for lienable services, it is our opinion that Larson's testimony, the time sheets, the construction payroll authorizations by Loop, and the language of article 6 of the AIA document obligating defendants to reimburse plaintiff for wages paid to laborers, when taken together, constitute *prima facie* evidence of a contract for lienable carpentry labor.

Accordingly, and for the reasons stated, we affirm that portion of the court's order granting judgment for defendants on plaintiff's count for foreclosure of a mechanic's lien claim; but we reverse that portion of the order granting judgment for defendants on plaintiff's claim for a mechanic's lien for the costs of the carpentry labor, and we remand for further proceedings not inconsistent with this opinion.

Affirmed in part; reversed in part and remanded for further proceedings.

MEJDA, P.J., and LORENZ, J., concur.